1  GORDON SILVER
   MARK S. DZARNOSKI
2  Nevada Bar No. 3398
   Email: mdzarnoski@gordonsilver.com
3  500 N. Rainbow Blvd., Suite 120
   Las Vegas, NV 89107
4  Tel: (702) 796-5555
   Fax: (702) 369-2666
5  Attorneys for Defendants
   Timothy J. Hassett, Quentin D. Ponder,
6  Judson W. Bibb III, Theodore H. Banzhaf,
   Mark M. Hodowanec, and Nominal Defendant
7  HPEV, Inc.

8  **UNITED STATES DISTRICT COURT**

9  **DISTRICT OF NEVADA**

10 | PEAK FINANCE, LLC, Derivatively on behalf | CASE NO. 2:15-cv-01590-GMN-CWH
   | of Nominal Defendant, HPEV, INC.,

11 | Plaintiff,

12 | | **DEFENDANTS HPEV, INC., TIMOTHY J.**
   | vs. | **HASSETT, QUENTIN D. PONDER,**
13 | | **JUDSON W. BIBB III, THEODORE H.**
   | | **BANZHAF, AND MARK M.**
   | TIMOTHY J. HASSETT, QUENTIN D. | **HODOWANEC'S MOTION TO DISMISS**
14 | PONDER, JUDSON W. BIBB III, | **[39[ VERIFIED AMENDED**
   | THEODORE H. BANZHAF, AND MARK M. | **SHAREHOLDER DERIVATIVE**
15 | HODOWANEC, | **COMPLAINT**

16 | Defendants.

17 | and

18 | HPEV, INC.

19 | Nominal Defendant.

20

21      COMES NOW, Defendants HPEV, Inc. ("HPEV" or the "Company"), Timothy J.

22 Hassett ("Hassett"), Quentin D. Ponder ("Ponder"), Judson W. Bibb III ("Bibb"), Theodore H.

23 Banzhaf ("Banzhaf"), and Mark M. Hodowanec ("Hodowanec," together with Hassett, Ponder,

24 Bibb and Banzhaf, collectively herein, "Defendants"), by and through counsel, the law firm of

25 Gordon Silver, hereby files their Motion to Dismiss the Verified Amended Shareholder

26 Derivative Complaint [Dkt. 39], filed by Plaintiff Peak Finance, LLC's ("Plaintiff").

27 ///

28 ///

Gordon Silver
Attorneys At Law
500 N. Rainbow Blvd.
Suite 120
Las Vegas, NV 89107
(702) 796-5555

104439-001.0001/2689255

1 of 30

This Motion is made and based on the following Memorandum of Points and Authorities, the pleadings already on file, and any oral argument the Court may permit at the hearing of this matter.

DATED this 9th day of November, 2015.

GORDON SILVER

*/s/ Mark S. Dzarnoski*

MARK S. DZARNOSKI
Nevada Bar No. 3398
500 N. Rainbow Blvd., Suite 120
Las Vegas, Nevada 89107
Tel: (702) 796-5555
*Attorneys for Defendants*
*Timothy J. Hassett, Quentin D. Ponder,*
*Judson W. Bibb III, Theodore H. Banzhaf,*
*Mark M. Hodowanec, and Nominal Defendant*
*HPEV, Inc.*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### PRELIMINARY STATEMENT

This derivative lawsuit should be dismissed as to all parties for the following reasons:

1.  Plaintiff did not make a demand upon HPEV prior to filing the lawsuit and thus failed to satisfy the requirements of Rule 23.1;

2.  Plaintiff is not an adequate representative to maintain the derivative action it has filed;

3.  Plaintiff's Securities Exchange Act claim under Section 14(a) fails to satisfy the pleading requirements of the Private Securities Litigation Reform Act of 1995; and,

4.  Upon dismissal of the Securities Exchange Act claim, this Court lacks subject matter jurisdiction to hear the remaining state law claims.

Additionally, Plaintiff's Complaint should be dismissed as to Defendant Hodowanec for lack of personal jurisdiction.

As set forth in detail infra., except for Plaintiff's Securities Exchange Act claim for an alleged false proxy filed with the SEC by HPEV, the other state law claims are duplicative of another derivative lawsuit filed in this district against the Defendants herein by Spirit Bear Limited: i.e. *HPEV, Inc. v. Spirit Bear* and associated Third Party derivative action and

Gordon Silver
Attorneys At Law
500 N. Rainbow Blvd.
Suite 120
Las Vegas, NV 89107
(702) 796-5555

104439-001.0001/2689255

counterclaims pending in United States District Court, District of Nevada, CASE NO. 2:13-cv-01548-JAD-GWF (the "SBL Derivative Action"). In the SBL Derivative Action, the district court has already given its preliminary approval to a settlement that involves appointment of an independent director's committee to investigate claims that the individual Defendants herein issued debt or equity without prior authorization and gave unauthorized compensation to certain officers, directors and employees of the Company. The required Rule 23.1 Notice approved by the district court in the SBL Derivative Action was sent to shareholders of record and not a single shareholder objected to the settlement including the Plaintiff herein. A final fairness hearing has been set in the SBL Derivative Action to consider final approval of the settlement therein for November 20, 2015.

Pursuant to the preliminarily approved settlement agreement in the SBL Derivative Action, on August 19, 2015, the Company held a Special Meeting of Shareholders at which time the Company, among other things, elected four new independent directors who had no part in the Board decisions at issue in this case or in the SBL Derivative Action. Three of those independent directors are to form the independent director committee to investigate the claims made in the SBL Derivative Action and determine the appropriate corporate response.

Knowing full well that a seven member Board, with a majority being independent, would likely be elected on August 19, 2015, Plaintiff made a strategic and tactical decision to file this derivative action on August 18, 2015 rather than make a demand upon the new Board. This tactical decision was made solely to colorably permit Plaintiff to argue that a demand would have been futile.

Based substantially on the questionable timing of the filing of the Complaint, on September 28, 2015, Defendants filed their Motion to Dismiss Verified Shareholder Derivative Complaint. [Dkt. 31]. Therein, Defendants argued that no demand futility, in fact, exists as had a demand been made on August 18, 2015, a committee of independent directors would have investigated the demand. Indeed, on September 28, 2015, by Unanimous Written Consent, the new Board has formed an independent director committee to investigate both the allegations made in the SBL Derivative Action and the present action.

Gordon Silver
Attorneys At Law
500 N. Rainbow Blvd.
Suite 120
Las Vegas, NV 89107
(702) 796-5555

104439-001.0001/2689255

3 of 30

1       Rather than defend its futility allegations made in the Complaint, Plaintiff filed a First

2 Amended Verified Shareholder Derivative Complaint (hereinafter "FAC").   Plaintiff now

3 concedes that demand futility must be tested with reference to the committee of independent

4 directors elected on August 19, 2015 rather than the constituency of the Board as of August 18,

5 2015.   However, Plaintiff refuses to make a demand upon the newly constituted Board and

6 wholly fails to properly plead demand futility with respect thereto.

7       Plaintiff is not an adequate derivative representative for numerous reasons.   First, the

8 questionable timing of the filing of the lawsuit to colorably argue that a demand would be futile

9 calls into serious question the Plaintiff's integrity.   Second, Plaintiff's control person assisted in

10 the role of quasi-mediator to settle the SBL Derivative Action and Plaintiff filed no objection to

11 the Derivative Action Settlement Agreement (the "DASA") although given the notice and

12 opportunity to do so. Indeed, no shareholder has objected to the settlement in the SBL Derivative

13 Action indicating clear agreement that the issues raised should be considered by an independent

14 directors committee. Third, Plaintiff actually voted in favor of ratifying the management

15 compensation complained of herein at an Annual Meeting of Shareholders held in January of

16 2014 as did 78% of the voting shareholders indicating clear agreement that the compensation

17 was fair and reasonable.   Fourth, many of Plaintiff's derivative claims are based upon the claim

18 that two February 20, 2013 Resolutions were wrongfully adopted.   Plaintiff was not a

19 shareholder of the Company until July of 2013 and thus has no standing to challenge the

20 February 20, 2013 actions because Plaintiff lacks continuity of ownership required in a

21 derivative action.

22       Plaintiff's sole claim giving this Court subject matter jurisdiction (i.e. the false Proxy

23 claim) is woefully inadequate in complying with the pleading requirements of the Private

24 Securities Litigation Reform Act of 1995 ("PSLRA").   In their initial Motion to Dismiss,

25 Defendants argued that it is not remotely plausible that the allegedly false matters contained in

26 the proxy statement were the transactional cause of harm of which Plaintiff complains or that

27 they were an essential link in the accomplishment of the transactions approved at the Special

28 Meeting.   Rather than defend their initial Complaint, Plaintiff has shuffled the deck, abandoned

Gordon Silver
Attorneys At Law
500 N. Rainbow Blvd.
Suite 120
Las Vegas, NV 89107
(702) 796-5555

104439-001.0001/2689255

1   most of the false Proxy allegations made in the initial Complaint and has alleged new material

2   omissions in the FAC in the hopes of salvaging a claim under the Securities Exchange Act of

3   1934. However, the new allegations do not remedy Plaintiff's non-compliance with the pleading

4   requirements of the PSLRA. Incredibly, Plaintiff now alleges material omissions regarding

5   matters that courts uniformly have determined do not constitute material facts requiring

6   disclosure.   Without the Securities Exchange Act claim, no subject matter jurisdiction exists

7   over the remaining claims.

8        Finally, there is no personal jurisdiction over Defendant Hodowanec.   In the SBL

9   Derivative Action, plaintiff therein also named Hodowanec as a defendant.  Therein, the district

10   court entered an order dismissing him for lack of personal jurisdiction for the same reasons this

11   Court should dismiss Hodowanec.  Hodowanec is nothing more than an employee of HPEV with

12   the title Chief Technology Officer who in no way participated in approving any action

13   complained of herein.

14
## II.

15
## LEGAL ARGUMENT

16   **A.**   **LEGAL STANDARD.**

17       **1.**   **Motion to Dismiss – 12(b)(2) Lack of Personal Jurisdiction**

18        Federal Rule of Civil Procedure 12(b)(2) provides that a defendant may assert the defense

19   of lack of personal jurisdiction by motion.  Further, "(n)o defense or objection is waived by

20   joining it with one or more other defenses or objections in a responsive pleading or in a motion."

21   *Id.*

22        Personal jurisdiction exists if: (1) provided for by law; and (2) the exercise of jurisdiction

23   comports with due process. *See Greenspun v. Del E. Webb Corp.*, 634 F.2d 1204, 1207 (9th Cir.

24   1980). When no federal statute governs personal jurisdiction, a federal court applies the law of

25   the forum state. *See Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Where a forum

26   state's long-arm statute provides its court's jurisdiction to the fullest extent of the Due Process

27   Clause of the Fourteenth Amendment, a court need only apply federal due process standards, *see*

28   *Boschetto*, 539 F.3d at 1015. Nevada's long arm-statute provides such jurisdiction.  *Arbella Mut.*

Gordon Silver
Attorneys At Law
500 N. Rainbow Blvd.
Suite 120
Las Vegas, NV 89107
(702) 796-5555

104439-001.0001/2689255

*Ins. Co. v. Eighth Judicial Dist. Court*, 122 Nev. 509, 134 P.3d 710, 712 (Nev. 2006) (citing Nev. Rev. Stat. § 14.065),

There are two categories of personal jurisdiction: general jurisdiction and specific jurisdiction. General jurisdiction exists over a defendant who has "substantial" or "continuous and systematic" contacts with the forum state such that the assertion of personal jurisdiction over him is constitutionally fair even where the claims are unrelated to those contacts. *See Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1171 (9th Cir. 2006) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)).

Even where there is no general jurisdiction over a defendant, specific jurisdiction exists when there are sufficient minimal contacts with the forum such that the assertion of personal jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945) (quoting *Milliken*, 311 U.S. at 463). The Ninth Circuit has developed a three-part test for specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.
>
> *Boschetto, 539 F.3d at 1016 (quoting Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004)).*

The plaintiff bears the burden on the first two prongs. If the plaintiff establishes both prongs one and two, the defendant must come forward with a "compelling case" that the exercise of jurisdiction would not be reasonable. But if the plaintiff fails at the first step, the jurisdictional inquiry ends and the case must be dismissed. W*aterfall Homeowners Ass'n v. Viega, Inc.*, 283 F.R.D. 571, 575-577, 2012 U.S. Dist. LEXIS 94985, 10-16.

It is well established that the Court may consider affidavits and other materials when weighing a Motion to Dismiss for lack of personal jurisdiction under Rule 12(b)(2) without

Gordon Silver
Attorneys At Law
500 N. Rainbow Blvd.
Suite 120
Las Vegas, NV 89107
(702) 796-5555

104439-001.0001/2689255

1    transforming the motion into a Motion for Summary Judgment. *Doe v. Unocal Corp.,* 248 F.3d

2    915, 922 (9th Cir. 2001); *Amba Mktg. Sys., Inc. v. Jobar Int'l. Inc.,* 551 F.2d 784, 787 (9th Cir.

3    1977); *Bach v. McDonnell Douglas, Inc.,* 468 F. Supp. 521, 524 (D. Ariz. 1979). In Rule

4    12(b)(2) motions, "the court may consider evidence presented in affidavits to assist in its

5    determination and may order discovery on the jurisdictional issues." *Doe,* 248 F.3d at 922 (citing

6    to *Data Disc. Inc. v. Sys. Tech. Assoc., Inc.,* 557 F.2d 1280, 1285 (9th Cir. 1977)). In fact, a

7    plaintiff, in defending itself against a motion to dismiss for lack of personal jurisdiction is

8    "obligated to come forward with facts, by affidavit or otherwise, supporting personal

9    jurisdiction." *Amba,* 551 F.2d at 787 (citing to *Taylor v. Portland Paramount Corp.,* 383 F.2d

10   634, 639 (9th Cir. 1967).

11        **2.     Motion to Dismiss – 12(b)(6) Failure to State a Claim**

12        Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of an action when a

13   Plaintiff fails "to state a claim upon which relief can be granted." To survive a motion to dismiss

14   for failure to state a claim, the complaint must satisfy FRCP 8(a)(2) and contain "a short and

15   plain statement of the claim showing that the pleader is entitled to relief." While Rule 8(a)(2)

16   sets forth a notice pleading standard, a pleading that offers merely "'labels and conclusions' or 'a

17   formulaic recitation of the elements of a cause of action'" will not suffice. *Ashcroft v. Iqbal,* 556

18   U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) quoting *Bell Atlantic Corp. v. Twombly,*

19   550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Factual allegations must show

20   "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* 129 S.

21   Ct. 1937, 1949 (2009).

22        Well-pleaded factual allegations are presumed true when considering a Rule 12(b)(6)

23   motion, but legal conclusions are not. *Id.*   Mere recitals of the elements of a cause of action,

24   supported only by conclusory statements, do not suffice. *Id.*   The court must consider whether

25   the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 1950. A claim is

26   facially plausible when plaintiff's complaint alleges facts that allows the court to draw a

27   reasonable inference that defendant is liable for the alleged misconduct. *Id.* at 1949. Where the

28   complaint does not permit the court to infer more than the mere possibility of misconduct, the

Gordon Silver
Attorneys At Law
500 N. Rainbow Blvd.
Suite 120
Las Vegas, NV 89107
(702) 796-5555

104439-001.0001/2689255

complaint has "alleged – but not shown – that the pleader is entitled to relief." *Id.* (internal quotations omitted). When the claims in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

"Review on a motion pursuant to Fed. R. Civ. P. 12(b)(6) is normally limited to the complaint itself." *Goodwin v. Executive Tr. Servs., LLC*, 680 F. Supp. 2d 1244, 1250 (D. Nev. 2010). There are three exceptions to this rule:

> 1) a court may consider documents properly submitted as part of the complaint on a motion to dismiss;
>
> 2) if documents are not physically attached to the complaint, incorporation by reference is proper if the document's authenticity ... is not contested and the plaintiff's complaint necessarily relies on them; and
>
> 3) a court may take judicial notice of matters of public record.

*Lonberg v. Freddie Mac*, 776 F. Supp. 2d 1202, 1206 (D. Or. 2011)(internal citations omitted)(ellipsis in original). Documents are incorporated by reference when a complaint "refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie,* 342 F.3d 903, 907 (9th Cir.2003); *see also Rosales-Martinez v. Palmer*, ---F.3d ---, 2014 WL 2462557 (9th Cir. June 3, 2014)( "When reading a complaint that incorporates or summarizes documents, we may also consider the documents thus incorporated or summarized"); *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012) (courts may consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.")(internal citations omitted).

The FAC herein references, incorporates and/or summarizes numerous written documents that have been filed with the SEC. Additionally, the Complaint references matters related to *HPEV, Inc. v. Spirit Bear* and associated Third Party derivative action and counterclaims pending in United States District Court, District of Nevada, CASE NO. 2:13-cv-01548-JAD-GWF which has been identified as a "Related Case" in a Notice of Related Case filed herein. [*See* Dkt. 5]. As there is no question as to authenticity, the Court may consider the public filings made by HPEV with the SEC and the docket entries in *HPEV, Inc. v. Spirit Bear*, supra.

Gordon Silver
Attorneys At Law
500 N. Rainbow Blvd.
Suite 120
Las Vegas, NV 89107
(702) 796-5555

104439-001.0001/2689255

### 3.   Derivative Lawsuits

Federal Rule of Civil Procedure 23.1 provides as follows:

(a) PREREQUISITES. This rule applies when one or more shareholders or members of a corporation or an unincorporated association bring a derivative action to enforce a right that the corporation or association may properly assert but has failed to enforce. The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association.

(b) PLEADING REQUIREMENTS. The complaint must be verified and must:

(1) allege that the plaintiff was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on it by operation of law;

(2) allege that the action is not a collusive one to confer jurisdiction that the court would otherwise lack; and

(3) state with particularity:

(A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and

(B) the reasons for not obtaining the action or not making the effort.

(c) SETTLEMENT, DISMISSAL, AND COMPROMISE. A derivative action may be settled, voluntarily dismissed, or compromised only with the court's approval. Notice of a proposed settlement, voluntary dismissal, or compromise must be given to shareholders or members in the manner that the court orders.

This federal rule substantially mirrors Nevada law[1] which also requires a plaintiff who wishes to proceed derivatively on behalf of a corporation to make a demand on the corporation's board of directors prior to filing a lawsuit, or to demonstrate with specificity that demand is excused. As to issues related to demand futility and/or the legal impact of the refusal of the

---

[1] NRCP 23.1 provides as follows: "In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege that the plaintiff was a shareholder or member at the time of the transaction of which the plaintiff complains or that the plaintiff's share or membership thereafter devolved on the plaintiff by operation of law. The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort. The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association. The action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to shareholders or members in such manner as the court directs."

Gordon Silver
Attorneys At Law
500 N. Rainbow Blvd.
Suite 120
Las Vegas, NV 89107
(702) 796-5555

104439-001.0001/2689255

9 of 30

demand, state law governs. *Scimeca v. Kim*, 2007 U.S. Dist. LEXIS 99308, 9 (United States District Court for the District of Arizona Decided; August 29, 2007)). *See also Country Nat'l Bank v. Mayer*, 788 F. Supp. 1136, *1141; 1992 U.S. Dist. LEXIS 4027, **11 (United States District Court for the Eastern District of California, 1992) (State law governs the rule of demand and excuse applicable to shareholder derivative claim against the Bank, unless the law of demand and excuse infringes the National Bank Act or otherwise imposes an undue burden on the performance of the Bank's functions.)

In *Shoen v. Sac Holding Corp.*, 122 Nev. 621, 137 P.3d 1171 (2006), the Nevada Supreme Court adopted the test for demand futility adopted in Delaware in *Aronson v. Lewis*, 473 A.2d 805, 814, 1984 Del. LEXIS 305, 24 (Del. 1984).

> NRCP 23.1 imposes heightened pleading imperatives in shareholder derivative suits.[19] Under this rule, a derivative complaint must state, with particularity, the demand for corrective action that the shareholder made on the board of directors (and, possibly, other shareholders) and why he failed to obtain such action, or his reasons for not making a demand.[20] Thus, as the Delaware Supreme Court has recognized in a similar shareholder demand context, a shareholder must "set forth ... particularized factual statements that are essential to the claim" that a demand has been made and refused, or that making a demand would be futile or otherwise inappropriate.[21] We note, however, that NRCP 8(e) requires pleadings to be "simple, concise, and direct." Accordingly, "the pleader is not required to plead evidence."[22] Nonetheless, mere conclusory assertions will not suffice under NRCP 23.1's "with particularity" standard.[23]

*Shoen v. Sac Holding Corp.*, 122 Nev. 621, 633-634, 137 P.3d 1171. 1179-1180 (2006).

A plaintiff can overcome the presumption of director disinterestedness only with particularized facts indicating that the director's actions were "so egregious that a substantial likelihood of directorial liability exists." *In re Silicon Graphics*, 183 F.3d at 990 (quoting *Aronson*, 473 A.2d at 805). A showing that the potential for liability rises to a "substantial likelihood" requires particularized factual allegations "detailing the precise roles that these directors played at the company, the information that would have come to their attention in these roles, and any indication as to why they would have perceived the [wrongdoing]." *Guttman*, 823 A.2d at 503.

When the alleged wrong is the result of a business decision by the whole board of directors, a court should employ the *Aronson* test. *Aronson v. Lewis*, 473 A.2d 805, 812 (Del.1984). Pursuant to Delaware law, whenthe board members who approved the challenged act have since changed, or when the challenged act does not constitute a business decision by the

Gordon Silver
Attorneys At Law
500 N. Rainbow Blvd.
Suite 120
Las Vegas, NV 89107
(702) 796-5555

104439-001.0001/2689255

board, a court should employ a different test set forth in *Rales v. Blasband,* 634 A.2d 927 (Del.1993). The *Rales* test, which determines whether the particularized factual allegations create a reasonable doubt that, as of the time the complaint was filed, a majority of the board as constituted at that time could have properly exercised its independent and disinterested business judgment in responding to a demand. *Rales,* 634 A.2d at 934. In short,

> [T]he right of a stockholder to prosecute a derivative suit is limited to situations where the stockholder has demanded that the directors pursue the corporate claim and they have wrongfully refused to do so or where demand is excused because the directors are incapable of making an impartial decision regarding such litigation.

*Id.* at 932.

A shareholder's failure to sufficiently plead compliance with the demand requirement deprives the shareholder of standing and justifies dismissal of the complaint for failure to state a claim upon which relief may be granted. *Shoen v. Sac Holding Corp.,* 122 Nev. 621, 634, 137 P.3d 1171. 1180 (2006).

**B.    Plaintiff's Futility Allegations Are Misleading And Incomplete**

In the present case, Plaintiff's futility allegations as set forth in the initial Complaint were incomplete and misleading. [*See* Complaint at paragraphs 243-250]. Essentially, Plaintiff asserted therein that "(a)t the time this action was initiated," the Board consisted of three directors who engaged in the alleged wrongdoing and profited therefrom." [Complaint at para. 248]. Left unstated, however, is that the Complaint was strategically filed on August 18, 2015 which was one day prior to a Special Meeting of Shareholders being held at which time four (4) new directors were standing for election.

Indeed, on August 19, 2015, HPEV shareholders elected four new directors who did not previously participate in the management and operations of HPEV.[2]  Plaintiff knew full well at the time of filing of the initial Complaint that at least three of the four newly elected directors were to sit on an Independent Directors Committee (the "IDC") to specifically consider the propriety of the management directors' conduct vis a vis Plaintiff's allegations set forth in the

---

[2] *See* Form 8-K filed on August 20, 2015 attached hereto as **Exhibit 1**. Defendants request that the Court take judicial notice of the Form 8-K.

Gordon Silver
Attorneys At Law
500 N. Rainbow Blvd.
Suite 120
Las Vegas, NV 89107
(702) 796-5555

104439-001.0001/2689255

Complaint regarding wrongful issuance of equity or debt and unauthorized management compensation and to consider the appropriate corporate response thereto. Defendants ask the Court to take judicial notice of the Docket in *HPEV, Inc. v. Spirit Bear* and associated Third Party derivative action and counterclaims pending in United States District Court, District of Nevada, CASE NO. 2:13-cv-01548-JAD-GWF (the "SBL Derivative Action").

The SBL Derivative Action was/is a Third Party derivative lawsuit against Defendants herein filed by Spirit Bear Limited, an alleged HPEV shareholder. [*See* SBL Derivative Action Dkt. 38 – Answer and Verified Derivative Counter and Third Party Claim attached hereto as **Exhibit 2**]. The SBL Derivative Action alleged virtually identical claims against the Defendants herein for issuance of equity and debt without proper approval and payment of unauthorized management compensation. After several years of contentious litigation, the parties in the SBL Derivative Action reached a Derivative Action Settlement Agreement (the "DASA") which received preliminary approval of the district court. [*See* SBL Derivative Action, Dkt. 167 - Stipulation and Order filed therein which is attached hereto as **Exhibit 3** which is hereinafter referred to as the "2/20/15 Order"]. A final fairness hearing is currently set for November 20, 2015 in the SBL Derivative Action at which time the district court will consider whether to give final approval to the DASA.

Of particular relevance to this case are the representations contained in the Stipulation filed with the district court seeking preliminary approval of the DASA and approval of the Notice of Settlement to be sent to the HPEV shareholders:

9.  The essential terms of the DASA are as follows:

(a)  The SBL Derivative Action will be dismissed, with prejudice;

(b)  Christopher McKee, Richard J. "Dick" Schul and Donald Bowman will assume director positions at HPEV to serve as successor directors to Jay Palmer, Carrie Dwyer, and Donica Holt ("SBL Holdover Directors").

(c)  Christopher McKee, Richard J. "Dick" Schul and Donald Bowman will form an Independent Directors Committee ("IDC") and shall review the merits of Spirit Bear's derivative claims as set forth in the SBL Derivative Action;

(d)  Exercising their sound business judgment, the IDC shall determine the appropriate corporate response of HPEV to the claims raised in the SBL Derivative Action;

Gordon Silver
Attorneys At Law
500 N. Rainbow Blvd.
Suite 120
Las Vegas, NV 89107
(702) 796-5555

104439-001.0001/2689255

12 of 30

(e)     The IDC shall have the sole and absolute discretion to take any appropriate responsive action including but not limited to (a) ratification of any and all actions previously undertaken under the authority of the Management Directors; (b) filing a lawsuit against any and all Management Officers & Directors setting forth similar or identical claims as those set forth in the SBL Derivative Action; (c) settling, with or without litigation, any and all claims HPEV may have against any and all Management Officers & Directors on terms and conditions they deem in the best interest of HPEV; and/or (d) taking such other action as they determine is in the best interest of HPEV.

(f)     IDC action shall be deemed valid and enforceable if undertaken pursuant to a majority vote of the IDC although the number of IDC members may not be a quorum of all directors of HPEV.

24.     The DASA provides that a committee of independent directors "shall review the merits of SBL's Derivative Claims as set forth in the SBL Derivative Action" and "(e)xercising their sound business judgment, the IDC shall determine the appropriate corporate response of HPEV to the claims for relief raised in the SBL Derivative Action." [See Section 3 of the DASA]."

25.     The parties agreed in the DASA that the IDC would be comprised of "independent" (*i.e.*, disinterested) directors solely because the individuals up for election are not alleged to have been involved in the conduct underlying the SBL Derivative Action.

26.     Pursuant to Section 4 of the DASA, both the Management Directors (Hassett, Ponder and Bibb) and the SBL Holdover Directors have unanimously agreed to the establishment of the IDC and the grant of authority set forth above. They have also unanimously so agreed in the UWC.

27.     A committee of independent directors enjoys the presumption that its actions are *prima facie* protected by the business judgment rule. *In re Tyson Foods, Inc. Consol. S'holder Litig.*, 919 A.2d 563, 591, 2007 Del. Ch. LEXIS 19, 64, 41 Employee Benefits Cas. (BNA) 1069 (Del. Ch. 2007).

28.     A committee of independent directors has the power to cause a pending derivative suit to be dismissed in a context wherein a prior demand on the board of directors was excused. *Zapata Corp. v. Maldonado*, Del.Supr., 430 A.2d 779 (1981). *See also Abbey v. Computer & Communications Technology Corp.*, 457 A.2d 368, 372, 1983 Del. Ch. LEXIS 390, 10-11 (Del. Ch. 1983).

[SBL Derivative Action, Dkt. 167, attached hereto as Exhibit 3].

A review of the content of the Notice approved by the district court in the SBL Derivative Action (the "Approved Notice") clearly demonstrates that the claims raised therein are virtually identical to the claims raised in the case sub judice. In describing the claims, the Approved Notice states: "Spirit Bear's claims for relief in the SBL Derivative Action allege two principal wrongdoings by HPEV's Management Directors and Banzhaf: *i.e.* (1) that management took unauthorized and excessive compensation and (2) management issued debt or equity without authority. Spirit Bear made a demand upon HPEV to rescind the management compensation and

Gordon Silver
Attorneys At Law
500 N. Rainbow Blvd.
Suite 120
Las Vegas, NV 89107
(702) 796-5555

104439-001.0001/2689255

1    the allegedly unauthorized debt or equity issuances and alleges that the Management Directors of

2    HPEV wrongfully denied this demand.   The Management Directors and Banzhaf deny the

3    allegations contained in the SBL Derivative Action." [*See* **Exhibit 4**].

4         As a shareholder of record since June 18, 2013 [*See* Complaint at para. 9], Plaintiff

5    cannot dispute that it received a copy of the aforementioned Approved Notice and knew, at the

6    time of filing this Complaint, of the plan to appoint/elect new directors to independently consider

7    the corporate response of HPEV to the very same allegations of management misconduct alleged

8    in the instant matter.   Although the 2/20/15 Order and the Approved Notice provided Plaintiff the

9    opportunity to file objections to the DASA by April 30, 2015, Plaintiff filed no such opposition.

10   Indeed, the district court docket evidences that no shareholder filed any objection to the DASA.

11        Nor can Plaintiff assert that it was unaware of the August 19, 2015 election of directors.

12   This election was noticed by the very same Proxy that Plaintiff refers to as the 2015 Proxy

13   Statement.   [*See* **Exhibit 5** hereto].   The date for election of directors and other matters was set

14   for August 19, 2015.   As to election of directors, the 2015 Proxy Statement specifically

15   references the First Amendment to Settlement Agreement "filed and described in the Current

16   Report on Form 8-K filed by the Company with the Securities and Exchange Commission on

17   June 4, 2015."   The June 4, 2015 Form 8-K (attached hereto as **Exhibit 6**) attached a copy of the

18   First Amendment to Settlement Agreement.   Further, the June 4, 2015 Form 8-K referenced the

19   May 5, 2015 Form 8-K (attached hereto as **Exhibit 7**) which attached a copy of the Settlement

20   Agreement and the DASA.

21        There can be absolutely no question that as of the date of filing of the instant Complaint,

22   Plaintiff knew (1) of the settlement of the derivative suit in the SBL Derivative Action; (2) that

23   HPEV was in the process of appointing the IDC to consider shareholder demands relating to the

24   very wrongdoing alleged in the instant action; (3) that the election of directors to sit on the IDC

25   would occur one day after filing this lawsuit; and (4) that any demand sent by Plaintiff on August

26   18, 2015 would be considered by an independent group of directors elected on August 19, 2015

27   and not the management directors named as parties to this lawsuit.

28   ///

Gordon Silver
Attorneys At Law
500 N. Rainbow Blvd.
Suite 120
Las Vegas, NV 89107
(702) 796-5555

104439-001.0001/2689255

14 of 30

1    Thus, in their Motion to Dismiss, Defendants sought dismissal because Plaintiff failed to

2    allege demand futility with respect to the independent directors committee and the new Board as

3    it existed on August 19, 2015. In the FAC, Plaintiff concedes that the proper Board to receive a

4    demand in the one that existed as of August 19, 2015 and includes Directors McKee, Ustian,

5    Schul and Bowman. [Dkt 39 at para. 243]. As set forth hereinbefore, inasmuch as Directors

6    McKee, Schul and Bowman have been appointed to the Independent Directors Committee to

7    consider the allegations of SBL in the SBL Derivative Action and Plaintiff herein, Plaintiff must

8    establish demand futility as to those directors.

9    Indeed, in *Schoen*, the Nevada Supreme Court identified the salient purpose of the

10   demand futility requirement as follows:

11         This demand requirement recognizes the corporate form in two ways. First, a
           demand informs the directors of the complaining shareholder's concerns and
12         gives them an opportunity to control any acts needed to correct improper conduct
           or actions, including any necessary litigation.[15] The demand requirement also
13         acknowledges that "the acts in question may be subject to ratification by a
           majority of the shareholders, thus precluding the necessity of suit."[16] Second, the
14         demand requirement protects clearly discretionary directorial conduct and
           corporate assets by discouraging unnecessary, unfounded, or improper
15         shareholder actions.[17] Thus, in "promoting ... alternate dispute resolution, rather
           than immediate recourse to litigation, the demand requirement is a recognition of
16         the fundamental precept that directors manage the business and affairs of
           corporations."[18]

17         *Schoen* at 633.

18

19   This Court should not undermine the legal principles underlying the demand requirement in

20   derivative actions by condoning manipulation of the legal system in the fashion attempted by

21   Plaintiff herein.

22   Plaintiff can only avoid dismissal if it can overcome the presumption of director

23   disinterestedness of McKee, Schul and Bowman by alleging particularized facts indicating that

24   (a) their actions were "so egregious that a substantial likelihood of directorial liability exists" [*In*

25   *re Silicon Graphics*, 183 F.3d at 990 (quoting *Aronson*, 473 A.2d at 805)] or (b) they are

26   incapable of making an impartial decision regarding this litigation pursuant to *Rales*, supra. The

27   only allegations made in the FAC are that McKee, Bowman and Schul are "neither independent

28   nor disinterested" [FAC, Dkt 39 at para. 245] because (a) they supposedly benefitted by

Gordon Silver
Attorneys At Law
500 N. Rainbow Blvd.
Suite 120
Las Vegas, NV 89107
(702) 796-5555

104439-001.0001/2689255                    15 of 30

1   receiving stock options and warrants in exchange for serving on the company's Board of

2   Advisors without proper Board authorization [FAC, Dkt 39 at para.s 246-251] and (b) their

3   election to the Board may be null and void.

4       Plaintiff has alleged no wrongdoing committed by McKee, Schul and/or Bowman. They are

5   not named as defendants herein. No relief is requested against them. There are no claims made

6   that it is wrongful to issue persons stock options or warrants in exchange for service on an

7   Advisory Board. There is no claim that the number of options granted to them was excessive or

8   that the conversion price is unfair. If, indeed, it is determined that a technical defect in obtaining

9   Board authorization occurred, a simple Board or shareholder ratification or Board resolution

10  authorizing re-issuance would cure the technical defect without raising any issues of breach of

11  fiduciary duty.

12      The basis for claiming the election may be null and void relates to alleged omissions

13  contained in a Proxy Statement. As set forth in Section II.D.2 below, as a matter of law, none of

14  the omitted information alleged by Plaintiff is required to be disclosed and cannot form the basis

15  of any claim to nullify a shareholder election.

16      Finally, this Court should remain mindful that the entire process of having Directors

17  McKee, Schul and Bowman serve on the Independent Director Committee had the additional

18  safeguard of Rule 23.1 as approval thereof is subject to oversight of the federal court in the SBL

19  Derivative Action.[3] No shareholder, including Plaintiff, filed any objection to this process when

20  given the opportunity following receipt of the Approved Notice disclosing this process. If any

21  shareholder, including Plaintiff, believed McKee, Schul and Bowman were not independent and

22  disinterested, they could have and should have filed an objection to the DASA in the SBL

23  Derivative Action. Plaintiff's claim regarding demand futility is clearly a product of recent

24  creation as evidenced by its failure to object to the DASA.

25  _____

26  [3] The Court is further advised that effective September 28, 2015, notwithstanding that the fairness hearing for final approval of the DASA is set for November 20, 2015 and that Plaintiff failed to make a demand upon HPEV prior to filing this lawsuit, by Unanimous Written Consent, the Board has established the IDC contemplated in the DASA.

27  The IDC, comprised of independent directors who did not participate in any alleged wrongdoing, will investigate the claims made in the SBL Derivative Action and in the instant Complaint to formulate a corporate response. The

28  IDC's scope of authority is broad in terms of any remedies it may seek. The Unanimous Consent is attached hereto as **Exhibit 15**.

Gordon Silver
Attorneys At Law
500 N. Rainbow Blvd.
Suite 120
Las Vegas, NV 89107
(702) 796-5555

**C.    Plaintiff is Not An Adequate Representative for Other Shareholders**

1
2        Plaintiff is not an adequate representative of the other HPEV shareholders.  NRCP 23.1
3   provides in relevant part that "(t)he derivative action may not be maintained if it appears that the
4   plaintiff does not fairly and adequately represent the interests of the shareholders or members
5   similarly situated in enforcing the right of the corporation or association."  Generally, whether a
6   Plaintiff is an adequate representative under Rule 23.1 is determined similarly to plaintiff's
7   adequacy in class actions under Rule 23.  *South v. Baker*, 62 A.3d 1, 21 (2012).  " 'Just what
8   measure of representation is adequate is a question of fact that depends on each peculiar set of
9   circumstances.' " *In re Revlon, Inc. S'holders Litig.*, 990 A.2d 940, 955 (Del.Ch.2010) (quoting
10  *Guerine v. J & W Inv., Inc.*, 544 F.2d 863, 864 (5th Cir.1977)).  "[A] court [must] consider any
11  extrinsic factors which might indicate that a representative might disregard the interests of" those
12  she seeks to represent. *Emerald P'rs v. Berlin*, 564 A.2d 670, 674 (Del.Ch.1989).
13       Plaintiff's attempt to manipulate the legal system by filing the initial Complaint one day
14  before the election of directors who would sit on the IDC to consider allegations of wrongdoing
15  by the management directors is reason enough to find that Plaintiff is not an adequate
16  representative for other shareholders.  A "derivative plaintiff serves in a fiduciary capacity as
17  representative  of persons whose interests are in plaintiff's  hands and the redress of whose
18  injuries is dependent upon her diligence, wisdom, and ***integrity***." *In re Fuqua Indus., Inc.*
19  *S'holder Litig.*, 752 A.2d 126, 129 (Del.Ch.1999) (citing *Katz v. Plant Indus., Inc.*, 1981 WL
20  15148 (Del.Ch. Oct.27, 1981)) (emphasis added).
21       In *Parfi Holding AB v. Mirror Image Internet, Inc.*, 954 A.2d 911, 942 (2008), the
22  Delaware court determined that the plaintiffs misled the court about material events for tactical
23  advantage.  The court further "pointed to prior instances when the plaintiffs had been less than
24  straightforward with this court." *Id.*  Based thereon, it determined that it could not conclude that
25  plaintiffs were adequate to serve in the fiduciary capacity of a derivative plaintiff. Plaintiff's
26  deliberate and conscious choice to file the Complaint, without demand, one day prior to having a
27  new board of independent directors elected seriously undermines any claim that Plaintiff could
28  serve in a fiduciary capacity as a derivative plaintiff.

Gordon Silver
Attorneys At Law
500 N. Rainbow Blvd.
Suite 120
Las Vegas, NV 89107
(702) 796-5555

104439-001.0001/2689255

While Plaintiff's gamesmanship in choosing a date to file the initial Complaint one day before a new Board was to be elected should be enough to find it inadequate to serve as a derivative plaintiff, additional facts also clearly call into question the adequacy of Plaintiff to represent the company and the other shareholders in a fiduciary capacity. For instance, rather than respond to the Motion to Dismiss the initial Complaint, Plaintiff chose to file the FAC. The Court should take judicial notice that Plaintiff also has filed a Motion to Intervene in the SBL Derivative Action [*See* Dkt.181 therein]. Therein, Plaintiff is seeking permission to file a Complaint in Intervention that is identical to the FAC filed herein. Plaintiff brings the same causes of action against the same defendants in the same court, using exactly the same language.

"Plaintiffs generally have 'no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant.' " *Adams v. California Dept. of Health Services,* 487 F.3d 684, 688 (9th Cir.2007) (quoting *Walton v. Eaton Corp.,* 563 F.2d 66, 70 (3d Cir.1 1977) (en banc)). "[A] suit is duplicative if the claims, parties, and available relief do not significantly differ between the two actions." *Id.* at 689. Thus, in its first two pleadings filed in this Court, Plaintiff has twice tried to game the system, first by trying to obfuscate the demand requirement by being less than candid regarding the constituency of the Board that would consider a demand and second by forum shopping by filing duplicative lawsuits in two different actions.

Further, as set forth above, the claims by Plaintiff that management took excessive compensation and were not authorized to seek additional equity or debt financing are the two principal claims made in the SBL Derivative Action. The United States District Court, District of Nevada gave preliminary approval to the settlement (i.e. the DASA) in the SBL Derivative Action. The DASA provided for the establishment of the IDC consisting of newly elected independent directors with full authority to investigate the allegations and determine whether and how to proceed. The Approved Notice was sent to all shareholders of record who were given until April 30, 2015 to file objections to the DASA. No objections to the DASA were filed by any shareholder of record, including Plaintiff herein. That no shareholder filed an objection to the DASA is a clear indication of the wishes of the shareholders to resolve the claims raised in

Gordon Silver
Attorneys At Law
500 N. Rainbow Blvd.
Suite 120
Las Vegas, NV 89107
(702) 796-5555

104439-001.0001/2689255                                    18 of 30

1  the SBL Derivative Action (and then again in the instant matter) by having the IDC investigate

2  the allegations and decide a proper course of action. Plaintiff's failure to object to the DASA as

3  of April 30, 2015 speaks clearly that Plaintiff's allegations in the instant lawsuit are of recent

4  concern/creation rather than based upon any good faith objection that it might have.

5      Further, Plaintiff fails to advise the Court that the issue of executive compensation was

6  presented to the shareholders for consideration and non-binding ratification after the allegations

7  were made by Spirit Bear Limited in the SBL Derivative Action. On January 13, 2014, an

8  Annual Meeting of Shareholders of HPEV was held. Proposal 3 thereat was a non-binding

9  resolution seeking approval of the compensation of management that forms the basis of half of

10  the subject matter of the SBL Derivative Action and much of this action. The shareholder vote

11  regarding approval of the executive compensation was as follows:

12        IN FAVOR -- 36,391,260;

13        AGAINST -- 10,397,840;

14        ABSTAIN -- 192,200.

15        [*See* Form 8K filed on 1/17/14 attached as **Exhibit 8** hereto].

16      Plaintiff herein was a shareholder of record as of January 13, 2014 and participated in the

17  vote at the Annual Meeting of Shareholders. Remarkably, Plaintiff cast its ballot on January 13,

18  2014 in favor of ratifying the executive compensation it now complains of. [*See* Hassett

19  Declaration at para. 29 attached hereto as **Exhibit 9**]. Thus, given that over 78% of the

20  shareholders, **including Plaintiff**, previously approved of the executive compensation that

21  Plaintiff now complains about, Plaintiff cannot be said to adequately represent the interests of the

22  other shareholders.

23      Next, on information and belief, Defendants assert that the direct or indirect control

24  person over the shares of common stock owned by Plaintiff is Bhavin Shah ("Shah"). . [Hassett

25  Declaration at para.s 18 to 28 attached as Exhibit 9 hereto]. Defendants Hassett and Hodowanec

26  entered into an agreement with Shah dated May 15, 2013 to sell Shah or his designated entity 3

27  million common shares of their own restricted shares. [Id.]. Subject to Board approval, Shaw

28  was to provide certain services to HPEV as an Advisory Board Chairman and was to be involved

Gordon Silver
Attorneys At Law
500 N. Rainbow Blvd.
Suite 120
Las Vegas, NV 89107
(702) 796-5555

104439-001.0001/2689255

19 of 30

in the day to day business management of the Company. [Id.] The agreement provided that for a period of ten days, HPEV was required to negotiate exclusively with Shah with respect to HPEV's funding requirements. [Id.]. It was also contemplated that Shah would be nominated to the Board of Directors. [Id.] The HPEV Board never approved the terms of this May 15, 2013 Agreement. [Id.]  However, Hassett and Hodowanec transferred 1.5 million shares each to Shah's designated entities: i.e. 1.5 million to Plaintiff and 1.5 million to an entity called Oak Lane Partners LLC. [Id.]. Defendants herein believe the transfers are subject to rescission for lack of consideration. [Id.].

Shah was integrally involved in the settlement of the SBL direct and derivative actions. [Id.] Prior to Thanksgiving in 2014, Shah attended a meeting with Defendant Hassett and SBL representative Robert Olins to see if he could mediate a settlement of their dispute. [Id.]. Throughout December 2014 and January 2015, Shah helped and led negotiations with HPEV and SBL in the role of quasi-mediator. [Id.]. He was integrally familiar with the Settlement & Release Agreement dated January 28, 2015 (the "SRA") and the DASA attached thereto which outlined the terms of the settlement of the derivative suit. [Id.]. He was also integrally familiar with the amended version of the SRA dated May 1, 2015. [Id.]. Plaintiff's true issue with management directors is that Shah feels underappreciated for his efforts in assisting the settlement of the prior litigation. [Id.]. By text message dated May 5, 2015, Shah wrote to Defendant Hassett as follows: "Congratulations! I'm happy you reached a settlement and I am hopeful someday you will appreciate all the effort I put in to bring both parties to the tab." [Id.].

Thus, far from having any complaints as a shareholder regarding the actions of management as Plaintiff now claims, Shah played a central role in settling the SBL derivative claims of unauthorized issuance of equity and unauthorized management compensation. Only after he failed to extract significant compensation from HPEV and/or SBL for his role in assisting settlement of the case did he promote the filing of the instant action.

Finally, in order for a shareholder to proceed with a derivative claim, he must have been a shareholder at the time the alleged wrongdoing occurred. A derivative plaintiff has no standing to challenge transactions that occurred prior to the time that plaintiff owned company stock. *See*

Gordon Silver
Attorneys At Law
500 N. Rainbow Blvd.
Suite 120
Las Vegas, NV 89107
(702) 796-5555

104439-001.0001/2689255

20 of 30

1   *In re Computer Sciences Corp. Derivative Litigation,* 244 F.R.D. 580, 591 (C.D.Cal.2007); *see*

2   *also Desimone v. Barrows,* 924 A.2d 908, 924–27 (Del.Ch.2007) (under Delaware law,

3   "continuing wrong" doctrine does not afford shareholder standing to challenge earlier wrongs

4   that pre-date his/her stock ownership).

5           The claims contained in paragraphs 221 through 226 of the FAC relate to compensation

6   paid to management personnel based upon two February 20, 2013 Resolutions.    In the SBL

7   Derivative Action, Spirit Bear claimed that the February 20, 2013 Resolutions were wrongfully

8   adopted and therefore the compensation paid pursuant thereto was unauthorized.    Plaintiff's

9   claims herein that the compensation paid was unauthorized similarly are dependent upon the

10  allegation that the February 20, 2013 Resolutions are invalid.    Plaintiff is not a proper

11  representative to make these claims because it was not a shareholder until June 18, 2013.    [*See*

12  FAC at para. 11].    Thus, Plaintiff has no standing to pursue these derivative claims for and on

13  behalf of the company and cannot be deemed as an adequate representative for wrongdoing that

14  is alleged to have occurred prior to June 18, 2013.

15  **D.     Plaintiff's Proxy Claims Must Be Dismissed Which Deprives the Court of Subject
        Matter Jurisdiction Over the Entire Complaint**

16

17          **1.     Standards Under The Private Securities Litigation Reform Act of 1995 and
                 Proxy Claims**

18          Motions to dismiss Exchange Act claims are governed by the Private Securities Litigation

19  Reform Act of 1995 ("PSLRA"), enacted by Congress to remedy perceived abuses in securities

20  class action litigation. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, ——, 127

21  S.Ct. 2499, 2504, 168 L.Ed.2d 179 (2007). Among other things, the PSLRA raised "the pleading

22  standards for private securities fraud plaintiffs." *In re Silicon Graphics Inc. Sec. Litig.,* 183 F.3d

23  970, 973 (9th Cir.1999). The PSLRA "requires plaintiffs to state with particularity both the facts

24  constituting the alleged violation, and the facts evidencing scienter." *Id.* (citing 15 U.S.C. § 78u–

25  4(b)(1), (2); *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 194 & n. 12, 96 S.Ct. 1375, 47 L.Ed.2d

26  668 (1976)). Post–PSLRA, a plaintiff must allege with particularity facts giving rise to a strong

27  inference that the defendant acted with the required state of mind. 15 U.S.C. § 78u–4(b)(2).

28  ///

Gordon Silver
Attorneys At Law
500 N. Rainbow Blvd.
Suite 120
Las Vegas, NV 89107
(702) 796-5555

104439-001.0001/2689255

To state a claim under § 14(a), a plaintiff must allege that a material misrepresentation or omission in a proxy statement was made with the requisite state of mind; and that the proxy statement was the transactional cause of harm of which plaintiff complains. *See Mills v. Electric Auto–Lite Co.,* 396 U.S. 375, 384, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970).   A plaintiff must also allege that the statement "was an essential link in the accomplishment of the proposed transaction." *Desaigoudar v. Meyercord,* 223 F.3d 1020, 1022 (9th Cir.2000).   Damages are recoverable under § 14(a) "only when the votes for a specific corporate transaction requiring shareholder authorization ... are obtained by a false proxy statement, and that transaction was the direct cause of pecuniary injury for which recovery is sought." *Gen'l Elec. Co. by Levit v. Cathcart,* 980 F.2d 927, 932 (3rd Cir.1992).

**2.   It is Not Plausible That The Alleged Proxy Misstatements Were the Transactional Cause of Any Injury to HPEV**

Plaintiff's cause of action under Section 14(a) is solely based upon alleged misstatements contained in the 2015 Proxy.   The FAC fails to set forth how certain alleged misstatements were an "essential link" in the accomplishment of any proposed transaction.   The sole allegations which address misstatements are found in paragraphs 207-217 of the FAC.

Paragraphs 207-208 of the FAC allege that the 2015 Proxy contained a disclosure that the Board amended Defendant Banzhaf's stock options by changing the milestone prices for exercise thereof on March 31, 2014.   Paragraph 208 of the FAC alleges that the 2015 Proxy failed to disclose that the March 31, 2014 amendment was "void or voidable."

The 2015 Proxy presented only three items for consideration as follows:

At the Meeting, the stockholders of the Company will be requested to vote upon the following:

1.   The change of the name of the Company from "HPEV, Inc." to "Cool Technologies, Inc."

2.   The election of four (4) directors to serve as directors until the next Annual Meeting of Stockholders and until their successors are elected.

3.   The increase in the number of shares of common stock the Company is authorized to issue from 100,000,000 to 140,000,000 shares of common stock.

Gordon Silver
Attorneys At Law
500 N. Rainbow Blvd.
Suite 120
Las Vegas, NV 89107
(702) 796-5555

104439-001.0001/2689255

22 of 30

[*See* 2015 Proxy attached as Exhibit 5 hereto].

Plaintiff makes zero effort to allege a plausible scenario where the issue of whether the March 31, 2014 amendments changing the milestone prices of Banzhaf's stock options are void or voidable would have been an "essential link" in causing the shareholders to approve any of the three items being voted upon by the shareholders. The name of the company is unrelated to the issue. Neither Banzhaf nor any of the other management directors who approved the amendment were on the ballot for election and thus the prior actions of the new candidates in approving the March 31, 2014 amendments were not an issue. The increase in the number of authorized shares is also wholly irrelevant to the alleged failure to disclose.

As alleged in the initial Complaint at paragraph 221, the purpose of the increase in the number of shares was as follows:

> The purpose of the proposed increase in authorized share capital is to make available additional shares of Common Stock for issuance for general corporate purposes without the requirement of further action by the stockholders of the Company. Further, the increase in authorized shares is to ensure that there are a more than adequate number of shares available for the Company to execute on the outstanding securities currently issued. Furthermore, and independent of the need to have additional shares of common stock available for the exercise or conversion of outstanding convertible securities, the Company will need additional authorized shares in connection with establishing additional employee or director equity compensation plans or arrangements or for other general corporate purposes. There is currently no agreement or arrangement with respect to any of the foregoing other than as described herein. Increasing the authorized number of shares of the Common Stock of the Company will provide the Company with greater flexibility and allow the issuance of additional shares of Common Stock in most cases without the expense or delay of seeking further approval from the stockholders.

The 2015 Proxy goes on to explain that "(a)s of June 16, 2015, there were 66,192,770 shares of Common Stock issued and outstanding. We would have to issue an aggregate of 10,000,000 shares of common stock if the current outstanding options to purchase shares of common stock are exercised, 29,856,807 shares of our common stock if the outstanding warrants are converted and to 7,000,000 shares of common stock if the 140 shares of our Preferred Stock would be converted. According to our Articles of Incorporation we are only authorized to issue 100,000,000 shares of common stock." [*See* Exhibit 5]. Thus, if all shares subject to options, warrant exercise and conversion of Preferred Stock to Common Stock were issued, the company would need to issue 46,856,807 more common shares. Upon such an occurrence, the company

Gordon Silver
Attorneys At Law
500 N. Rainbow Blvd.
Suite 120
Las Vegas, NV 89107
(702) 796-5555

104439-001.0001/2689255

1   would have 113,049,577 shares issued or 13,049,577 more than were then authorized.  Further,

2   the Company needed additional authorized but unissued shares "in connection with establishing

3   additional employee or director equity compensation plans or arrangements or for other general

4   corporate purposes."  It is simply not plausible that the failure to disclose that the alleged change

5   in milestone prices for the exercise of Defendant Banzhaf's stock options would in any way be

6   an "essential link" in  In paragraphs -214-215 of the FAC, Plaintiff alleges that the Company

7   previously admitted that certain stock issuances were ultra vires but failed to include such an

8   admission in the 2015 Proxy.  However, in paragraph 214, Plaintiff sets forth the actual content

9   of the supposed admission contained in an October 7, 2014 Proxy Statement.   The relevant

10  portion of the disclosure is as follows:

11          Further, in its Motion for Partial Summary Judgment, Spirit Bear advances the
            argument that if its three designees are and have been directors of the Company
12          since January 13, 2014, several actions would have been undertaken without
            proper authority and Spirit Bear may try to unwind those transactions.

13  The above disclosure is a statement of an opposing party's position and not an admission of the

14  Company.  It stated what Spirit Bear might do in the SBL Derivative Action which was rendered

15  entirely moot by the settlement thereof as reflected in the DASA.

16          By the time the 2015 Proxy was filed with the SEC, the Spirit Bear litigation was settled.

17  All that remained was for the filing of a Stipulation for Dismissal of Spirit Bear's direct action[4]

18  and a final fairness hearing for the DASA.[5]  There is absolutely no reason why the 2015 Proxy

19  should have contained another disclosure of the allegations of Spirit Bear Limited.  The litigation

20  with Spirit Bear has been subject to public filings repeatedly since it was initiated in August of

21  2013 and the re-disclosure of allegations post-settlement agreement would not change the total

22  mix of information available to the HPEV shareholders.  By Plaintiff's own admission, the

23  specific matter it claims was omitted in the 2015 Proxy was previously disclosed in another

24  proxy.  Finally, Plaintiff makes no effort to plead any facts which suggest that the failure to

25  disclose again the allegations of Spirit Bear in a post-settlement environment constitutes an

26
27  [4] The Stipulation was actually filed on August 28, 2015 [Dkt. 177] and the Order of Dismissal was entered on
    September 2, 2015 [Dkt. 178].

28  [5] With no objections to the DASA being filed, the fairness hearing has now been set for November 20, 2015 [Dkt.
    180]

Gordon Silver
Attorneys At Law
500 N. Rainbow Blvd.
Suite 120
Las Vegas, NV 89107
(702) 796-5555

104439-001.0001/2689255                    24 of 30

1   "essential link" in obtaining the approval of the shareholders for approving the increase in

2   authorized shares.

3          Next, Plaintiff alleges that the 215 Proxy failed to disclose that the SEC had issued a

4   Wells Notice to Board nominee Ustian regarding events that occurred years earlier with another

5   company. [FAC at para.s 210-211]. The Wells Notice to Ustian was dated August 13 or August

6   17, 2015. [FAC at para. 210]. The meeting of shareholders and the election of new directors

7   was on August 19, 2015. Apparently, Plaintiff believes that the July 10, 2015 Proxy should have

8   been amended to disclose the issuance of a Wells Notice to Ustian sometime after August 13 or

9   August 17, 2015 and before the election on August 19, 2015.

10          However, the FAC does not allege that either HPEV or Ustian was even aware of the

11   Wells Notice before August 19, 2015. Even if Ustian was aware of the Wells Notice prior to

12   August 19, 2015, HPEV was not. [*See* Supplemental Declaration of Tim Hassett attached hereto

13   as **Exhibit 10**]. Significantly, the FAC alleges that the issuance of the Wells Notice "was not

14   publicly disclosed until September 2, 2015, when Navistar filed its 2015 3Q Form 10-Q." [FAC

15   at para. 5].

16          Further, as a matter of law, the issuance of a Wells Notice is not a material fact requiring

17   disclosure. *Richman v. Goldman Sachs Group. Inc.*, 868 F.Supp.2d 261, 274 (S.D.N.Y., 2012)

18   ("While Plaintiffs claim to want to know about the Wells Notices, 'a corporation is not required

19   to disclose a fact merely because a reasonable investor would very much like to know that fact.'

20   *In re Time Warner Sec. Litig.,* 9 F.3d 259, 267 (2d Cir.1993). At best, a Wells Notice indicates

21   not litigation but only the desire of the Enforcement staff to move forward, which it has no

22   power to effectuate. This contingency need not be disclosed.").

23          Finally, Plaintiff alleges that the failure to disclose that the prior issuances of stock

24   options and warrants to Bowman, Schul, McKee and Ustian may be invalid supports a Section

25   14 cause of action. [FAC at para.s 212-217]. The first time any person or entity claimed that the

26   issuances of stock options and warrants to Bowman, Schul, McKee and Ustian were done

27   without proper Board approval is with the filing of the initial Complaint in this case on August

28   18, 2015. Additionally, the federal securities laws "do not require a company to accuse

Gordon Silver
Attorneys At Law
500 N. Rainbow Blvd.
Suite 120
Las Vegas, NV 89107
(702) 796-5555

104439-001.0001/2689255                                   25 of 30

itself of wrongdoing." *In re Citigroup, Inc. Sec. Litig.,* 330 F.Supp.2d 367, 377 (S.D.N.Y.2004) (citing *In re Am. Express Co. Shareholder Litig.,* 840 F.Supp. 260, 269–70 (S.D.N.Y.1993)); *see also Ciresi v. Citicorp,* 782 F.Supp. 819, 823 (S.D.N.Y.1991) (dismissing Exchange Act claims in part because "the law does not impose a duty to disclose uncharged, unadjudicated wrongdoing or mismanagement").   Further, Plaintiff wholly fails to plead a cogent argument for how the failure to disclose that certain stock options might not have been properly approved by a previous Board would be an "essential link" in the accomplishment of electing Bowman, Schul, McKee and Ustian to the new Board.

> **3.     Upon Dismissal of the Proxy Cause of Action, The Court Lacks Subject Matter Jurisdiction**

Plaintiff has alleged federal question jurisdiction over the Exchange Act claim under 28 U.S.C. 1331.   [FAC at para. 8].   For the remainder of the state law claims, Plaintiff pleads supplemental jurisdiction pursuant to 28 U.S.C. 1367.   [Id.].

Upon dismissal of Plaintiff's Exchange Act claim because it fails to satisfy the PSLRA, there is no basis for asserting subject matter jurisdiction over any part of this lawsuit.   Therefore, Defendants' Motion to Dismiss should be granted and the Complaint dismissed in its entirety.

**E.     There is No Personal Jurisdiction Over Defendant Hodowanec**

> **1.     No General Jurisdiction Exists Over Any Defendant**

In its Complaint, Plaintiff alleges the residence of the Third Party Defendant's as follows:

1. Hassett – California [FAC at para. 13];

2. Bibb – Florida [FAC at para. 15];

3. Ponder – Florida [FAC at para. 14];

4. Banzhaf – Oklahoma [FAC at para. 16] and

5. Hodowanec – Pennsylvania [FAC at para. 17].

Plaintiff further alleges that HPEV is a Nevada corporation [FAC at para. 12], that Hassett is and has  been CEO of HPEV and Chairman of HPEV's Board of Directors [FAC at para 13], that Bibb is the Vice President, Secretary and a Director of HPEV [FAC at para 15], that Ponder is CFO and a Director of HPEV [FAC at para. 14], that Banzhaf has been President of HPEV since

Gordon Silver
Attorneys At Law
500 N. Rainbow Blvd.
Suite 120
Las Vegas, NV 89107
(702) 796-5555

104439-001.0001/2689255

1  April 5, 2012 [FAC at para. 16] and that Hodowanec has been Chief Technology Officer of
2  HPEV since February 14, 2014 [FAC at para 17].  Hassett, Bibb and Ponder are alleged to be
3  "Current Director Defendants."  [FAC, para. 18].

4      The thrust of the remainder of the Complaint involves allegations that the Board and
5  management engaged in the unauthorized issuance of equity, improperly increased management
6  compensation and filed the allegedly false 2015 Proxy.  As to Hodowanec, the Complaint alleges
7  no conduct that he supposedly authorized or directed in his capacity as Chief Technology Officer
8  at all.

9      Plaintiff wholly fails to allege that any defendant has "substantial" or "continuous and
10 systematic" contacts with Nevada such that general personal jurisdiction exists over them.  As set
11 forth in the Declarations of the Individual Defendants [_See_ Declaration of Bibb attached as
12 **Exhibit 11**; Declaration of Ponder attached as **Exhibit 12**; Declaration of Banzhaf attached as
13 **Exhibit 13**; and Declaration of Hodowanec attached as **Exhibit 14**], none of them has ever lived
14 or worked in the State of Nevada.  None of them owns property in Nevada.  None of them
15 maintains a bank account in Nevada.  None of them has a license issued by Nevada.  None of
16 them have entered into a contract in Nevada.  There are no allegations any one of them has hired
17 or solicited anyone in Nevada.  Indeed, none of them have conducted any business in Nevada.

18     In short, there is no basis to assert general jurisdiction over any individual defendant.

19     **2.**    **No Specific Jurisdiction Exists Over Hodowanec**

20     Spirit Bear wholly fails to allege that HPEV conducts business in Nevada.  It fails to
21 allege that any of the complained of conduct occurred in Nevada.  If fails to allege that Third
22 Party Defendants performed any act within the State of Nevada.  It fails to allege that Third Party
23 Defendants have any contacts with the forum such that the assertion of personal jurisdiction
24 "does not offend 'traditional notions of fair play and substantial justice.'"

25     The declarations of the individual defendants set forth that HPEV does not conduct any
26 business operations in the State of Nevada.  HPEV maintains its registered office as required by
27 Nevada law at the offices of its Registered Agent, Incorp Services, Inc., 2360 Corporate Circle,
28 Suite 400, Henderson, Nevada, 89074.  However, as set forth in its most recently filed Form 10-

Gordon Silver
Attorneys At Law
500 N. Rainbow Blvd.
Suite 120
Las Vegas, NV 89107
(702) 796-5555

104439-001.0001/2689255

27 of 30

1   K with the Securities Exchange Commission, HPEV's principal place of business is located at

2   8875 Hidden River Parkway, Suite 300, Tampa, Florida 33637.

3       As set forth above, specific jurisdiction requires that the defendant must purposefully

4   direct his activities or consummate some transaction with the forum or resident thereof AND the

5   claim must be one which arises out of or relates to the defendant's forum-related activities.  No

6   individual defendant directed any activities to Nevada nor were any transactions consummated in

7   Nevada.  The only contact with the State of Nevada that is alleged is that Hassett, Bibb and

8   Ponder are officers and directors of a Nevada corporation, that Banzhaf is President of a Nevada

9   corporation and that Hodowanec is an employee of a Nevada corporation with the title of Chief

10   Technology Officer.  In *Shaffer v. Heitner*, 433 U.S. 186, 97 S. Ct. 2569, 53 L. Ed. 2d 683

11   (1977), plaintiffs argued that the individual defendants were subject to Delaware jurisdiction

12   because they accepted positions as officers or directors of a Delaware corporation and their

13   alleged wrongdoing arose from their actions as officers or directors. *Id.* at 215-16. The U.S.

14   Supreme Court determined that simply was not enough to justify forcing them before a Delaware

15   court. *Id.* at 216.

16       In *Consipio Holding, BV v. Carlberg*, 282 P.3d 751 (2012), the Nevada Supreme Court

17   distinguished that case from *Shaffer v. Heitner, supra.* and found personal jurisdiction over

18   officers and directors of Nevada corporations for conduct performed outside of Nevada.  The

19   factual analysis therein persuaded the Court that it was "reasonable" to exercise personal

20   jurisdiction over the officers and directors in that case.

21       This very issue of personal jurisdiction over these same Individual Defendants was before

22   the district court in the SBL Derivative Action.  Therein, the district court found it reasonable to

23   assert personal jurisdiction over Defendants Hassett, Bibb, Ponder and Banzhaf.  However, the

24   district court dismissed Defendant Hodowanec reasoning as follows:

25       Spirit Bear alleges that Hodowanec, a Pennsylvania resident, "holds himself out
    as the Chief Technology Officer" of HPEV, and it alleges 39 only "[o]n

26       information and belief," that "Hodowanec knowingly aided, abetted and
    participated with Management to breach their fiduciary duties to HPEV in

27       offering and issuing HPEV equity or debt without authority." No facts of this
    aiding and abetting are offered. Not only do these thin, 40 conclusory allegations

28       fail to state a claim for relief under the standards articulated by the United States
    Supreme Court in *Iqbal* and *Twombly*, but they also fail to provide any basis for

Gordon Silver
Attorneys At Law
500 N. Rainbow Blvd.
Suite 120
Las Vegas, NV 89107
(702) 796-5555

104439-001.0001/2689255

28 of 30

1    this court to 41 exercise personal jurisdiction over this non-resident defendant.
     Accordingly, the fourth third-party claim (asserted only against Hodowanec) is
2    dismissed for lack of personal jurisdiction.

3        [Dkt. 150, 8:9-17]

4        This Court should rule consistently with the district court in the SBL Derivative Action

5    and dismiss Hodowanec from the Complaint for lack of personal jurisdiction.   Hodowanec,

6    undeniably, is not a statutory officer or director of HPEV.  He did not consider or cast a vote

7    regarding any of the actions set forth in the Complaint.  As the designated Chief Technology

8    Officer, the scope of his activities is limited to making recommendations to the statutory officers

9    and directors related to technology issues.   [*See* Declaration of Hodowanec at para.s 5-18

10   attached hereto as Exhibit 14].

11                                  **III.**

12                               **CONCLUSION**

13       For the reasons set forth in the Motion to Dismiss, Defendants should be dismissed.

14       DATED this 9th day of November, 2015.

15                                    GORDON SILVER

16                                    */s/ Mark S. Dzarnoski*

17                                    MARK S. DZARNOSKI
                                      Nevada Bar No. 3398
18                                    500 N. Rainbow Blvd., Suite 120
                                      Las Vegas, Nevada 89107
19                                    Tel:  (702) 796-5555
                                      *Attorneys for Defendants*
20                                    *Timothy J. Hassett, Quentin D. Ponder,*
                                      *Judson W. Bibb III, Theodore H. Banzhaf,*
21                                    *Mark M. Hodowanec, and Nominal Defendant*
                                      *HPEV, Inc.*
22               .

23

24

25

26

27

28

Gordon Silver
Attorneys At Law
500 N. Rainbow Blvd.
Suite 120
Las Vegas, NV 89107
(702) 796-5555

104439-001.0001/2689255

29 of 30

**CERTIFICATE OF SERVICE**

The undersigned, an employee of Gordon Silver, hereby certifies that on the 9ᵗʰ day of November, 2015, she caused a copy of the foregoing **DEFENDANTS HPEV, INC., TIMOTHY J. HASSETT, QUENTIN D. PONDER, JUDSON W. BIBB III, THEODORE H. BANZHAF, AND MARK M. HODOWANEC'S MOTION TO DISMISS [39] VERIFIED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT**, to be served electronically to all parties of interest through the Court's CM/ECF system as follows:

Martin A. Muckleroy, Esq.
Muckleroy Lunt, LLC
6077 S. Fort Apache, Suite 140
Las Vegas, NV 89148
Email: martin@muckleroylunt.com

Anna Diallo, an employee of
GORDON SILVER

Gordon Silver
Attorneys At Law
500 N. Rainbow Blvd.
Suite 120
Las Vegas, NV 89107
(702) 796-5555

104439-001.0001/2689255

30 of 30