GORDON SILVER
MARK S. DZARNOSKI
Nevada Bar No. 3398
Email: mdzarnoski@gordonsilver.com
500 N. Rainbow Blvd., Suite 120
Las Vegas, NV 89107
Tel: (702) 796-5555
Fax: (702) 369-2666
Attorneys for Defendants
Timothy J. Hassett, Quentin D. Ponder,
Judson W. Bibb III, Theodore H. Banzhaf,
Mark M. Hodowanec, and Nominal Defendant
HPEV, Inc.

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| PEAK FINANCE, LLC, Derivatively on behalf of Nominal Defendant, HPEV, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>TIMOTHY J. HASSETT, QUENTIN D. PONDER, JUDSON W. BIBB III, THEODORE H. BANZHAF, AND MARK M. HODOWANEC,<br><br>Defendants.<br><br>and<br><br>HPEV, INC.<br><br>Nominal Defendant. | CASE NO. 2:15-cv-01590-GMN-CWH<br><br>**STIPULATION AND [PROPOSED] ORDER REGARDING SETTLEMENT** |

IT IS HEREBY STIPULATED, by and between Plaintiff Peak Finance, LLC ("PEAK" or "Peak Finance"), Defendants Timothy J. Hassett ("Hassett"), Quentin D. Ponder ("Ponder"), Judson W. Bibb III ("Bibb"), Theodore H. Banzhaf ("Banzhaf"), and Mark Hodowanec ("Hodowanec") (collectively, the "Individual Defendants")[1], and Nominal Defendant HPEV, Inc. ("HPEV" or the "Company"), by and through their counsel of record, that:

The Court should issue an Order setting a fairness hearing to consider giving final

[1] Defendants Hassett, Ponder and Bibb are sometimes collectively referred to as the "Management Directors." Defendants Hassett, Ponder, Bibb, Banzhaf and Hodowanec are sometimes collectively referred to as the "Management Officers and Directors."



104439-001.0001/2694054

approval to the settlement agreement negotiated between the Parties ("Settlement Agreement" or "Peak DASA") and to approve Notice thereof as proposed herein.

In support of the Stipulation and [Proposed] Order Regarding Settlement ("Stipulation and Order") sought by the parties, the undersigned advise the Court as follows:

## I. THE CURRENT MATTER BEFORE THE COURT

1. On August18, 2015, PEAK filed a Verified Shareholder Derivative Complaint in this matter (the "Peak Finance Derivative Case") [Dkt. 1].

2. Defendants in the Peak Finance Derivative Case filed a Motion to Dismiss on September 28, 2015. [Dkt. 31].

3. On October 22, 2015, PEAK filed an Amended Complaint in the Peak Finance Derivative Case. [Dkt. 39].

4. On November 9, 2015, HPEV and the Individual Defendants filed a Motion to Dismiss the Amended Complaint filed by PEAK in the Peak Finance Derivative Case. [Dkt. 40].

5. On May 17, 2016, the parties filed a Stipulation requesting that the Court hold in abeyance its decision regarding the Motion to Dismiss until the Court has either finally approved or rejected the proposed Settlement Agreement in this case. [Dkt. 50]. The Court has not yet ruled upon the Motion to Dismiss.

6. On April 20, 2016, the parties filed a Stipulation and Proposed Order Regarding Settlement [Dkt. 47]. This Stipulation sought preliminary approval of the Settlement Agreement and a proposed Notice to non-party shareholders advising them of the terms of the settlement and their right to object.

7. By Order dated May 19, 2016, the Court gave preliminary approval to the Settlement Agreement and approved the proposed Notice. [Dkt. 51]. The Court further directed that any objections of non-party shareholders were to be filed by July 29, 2016.

8. The Company provided the approved Notice to non-party shareholders by filing a Form 8-K with the Securities Exchange Commission on June 1, 2016 and by publishing the Notice and Settlement Agreement prominently on its website from on or about May 25, 2016 to

the present. [See Declaration of Mark S. Dzarnoski attached hereto as Exhibit 1].

9. No objections to the Settlement Agreement have been filed by non-party shareholders.

## II. THE SPIRIT BEAR DERIVATIVE ACTION

10. Spirit Bear, Ltd. ("Spirit Bear") and HPEV are parties to that certain Securities Purchase Agreement, dated as of December 14, 2012 (the "Purchase Agreement"), pursuant to which, among other things, Spirit Bear was issued preferred stock and warrants;

11. A dispute arose between Spirit Bear and HPEV in connection with the Purchase Agreement and other matters involving the ongoing management and operations of HPEV (the "Spirit Bear Dispute");

12. As a result of the Spirit Bear Dispute, Spirit Bear, HPEV and the Individual Defendants became involved in litigation including derivative claims filed by Spirit Bear against certain directors and/or officers of HPEV, including the Individual Defendants, (the "SBL Derivative Action") in HPEV, Inc. v. Spirit Bear Limited 13-cv-01548 (JAD) (GWF)(D. NEV.);

13. Spirit Bear, HPEV and the Individual Defendants entered into a Derivative Action Settlement Agreement (the "SBL DASA") in the SBL Derivative Action, which agreement was subject to final approval of the United States District Court;

14. On October 22, 2015, PEAK filed a Motion to Intervene in the SBL Derivative Action seeking, among other things, approval to file its own derivative complaint in the SBL Derivative Action;

15. At the November 20, 2015 fairness hearing in the SBL Derivative Action, the Court denied PEAK's Motion to Intervene.

16. At the November 20, 2015 fairness hearing, however, the Court did allow PEAK to formally argue its objections to the DASA and the Court ordered additional briefing on certain issues.

17. On April 20, 2016, the parties in the SBL Derivative Action filed a Stipulation and [Proposed] Order for Withdrawal of Objection to the SBL DASA.

/ / /

18. Following PEAK's withdrawal of its objection to the SBL DASA, the District Court, on May 3, 2016, gave its final approval to the SBL DASA and dismissed the SBL Derivative Action. [See Dkt. 203 therein].

## III. THE RELATIONSHIP BETWEEN THE INSTANT ACTION AND THE SBL DERIVATIVE ACTION

19. The SBL Derivative Action contains allegations of wrongdoing by the Individual Defendants that are substantially similar to but not co-extensive with the allegations set forth in the Peak Finance Derivative Case.

20. Both cases allege, among other things, ultra vires issuances of shares of stock by the Company and unauthorized or excessive compensation paid to management during overlapping periods of time.

21. On or about January 28, 2015, the parties in the SBL Derivative Action entered into a Settlement and Release Agreement ("SRA"). Pursuant to Section 2.5 of the SRA, "(t)he Parties agree[d] to seek … a complete dismissal of all Shareholder Derivative Claims" and executed the SBL DASA for submission to the Court for approval.

22. The essential terms of the SBL DASA are as follows:

a. The SBL Derivative Action will be dismissed with prejudice;

b. Christopher McKee, Richard J. "Dick" Schul and Donald Bowman will assume director positions at HPEV to serve as successor directors to Jay Palmer, Carrie Dwyer, and Donica Holt ("SBL Holdover Directors").

c. Christopher McKee, Richard J. "Dick" Schul and Donald Bowman will form an Independent Directors Committee ("IDC") and shall review the merits of Spirit Bear's derivative claims as set forth in the SBL Derivative Action;

d. Exercising their sound business judgment, the IDC shall determine the appropriate corporate response of HPEV to the claims raised in the SBL Derivative Action;

e. The IDC shall have the sole and absolute discretion to take any appropriate responsive action including but not limited to (a) ratification of any and all actions previously undertaken under the authority of the Management Directors; (b) filing a lawsuit against any and all Management Officers & Directors setting forth similar or identical claims as those set forth in the SBL Derivative Action; (c) settling, with or without litigation, any and all claims HPEV may have against any and all Management Officers & Directors on terms and conditions they deem

in the best interest of HPEV; and/or (d) taking such other action as they determine is in the best interest of HPEV; and

f. No action shall be deemed valid and enforceable if undertaken pursuant to a majority vote of the IDC although the number of IDC members may not be a quorum of all directors of HPEV.

23. On April 19 and April 20, 2016, the Parties herein signed the Settlement Agreement which contains substantially similar, but not identical, terms and conditions to the SBL DASA.

24. The essential terms of the Settlement Agreement/PEAK DASA are as follows:

a. The Parties acknowledge and agree that Christopher McKee, Richard J. "Dick" Schul and Donald Bowman have been duly elected as directors of HPEV pursuant to an election held on August 19, 2015.

b. The Parties acknowledge and agree that Christopher McKee, Richard J. "Dick" Schul and Donald Bowman have been appointed to an Independent Directors Committee ("IDC") which shall review the merits of Spirit Bear's derivative claims as set forth in the SBL Derivative Action;

c. In addition to reviewing the merits of Spirit Bear's claims in the SBL Derivative Action, all matters alleged by PEAK in the Peak Finance Derivative Case shall also be submitted to the IDC for their review of the merits of the claims made therein;

d. Exercising their sound business judgment, the IDC shall determine the appropriate corporate response of HPEV to the claims raised in both the SBL Derivative Action and the Peak Finance Derivative Case, including but not limited to (a) ratification of any and all actions previously undertaken under the authority of the Management Directors; (b) filing a lawsuit against any and all Management Officers & Directors setting forth similar or identical claims as those set forth in the SBL Derivative Action and/or the Peak Finance Derivative Case; (c) settling, with or without litigation, any and all claims HPEV may have against any and all Management Officers & Directors on terms and conditions they deem in the best interest of HPEV; and/or (d) taking such other action as they determine is in the best interest of HPEV.

e. IDC action shall be deemed valid and enforceable if undertaken pursuant to a majority vote of the IDC although the number of IDC members may not be a quorum of all directors of HPEV. No action by the IDC in connection with its duties and responsibilities pursuant to the Agreement shall be taken until such time as the IDC meets with PEAK, pursuant to Sections III.B and C of the Settlement Agreement.

/ / /

25. In addition to the terms set forth in paragraph 24 above, the Settlement Agreement/PEAK DASA has the following terms not included in the SBL DASA:

a. Within thirty (30) days of the Court's final approval of the Settlement Agreement/PEAK DASA, PEAK shall be given the opportunity to make a presentation solely to the IDC regarding the matters alleged in PEAK's Amended Complaint in the Peak Finance Derivative Case as well as other potential derivative claims PEAK believes may exist against HPEV's auditors and/or other third persons or entities.

b. PEAK and/or its representative shall have the opportunity to present the following matters to the Board:

1. the opportunity for PEAK to make an investment in the Company in exchange of some form of debt or equity or other consideration, terms to be negotiated;
2. the opportunity for Peak and/or its representative to identify and aid in procuring new investors for the Company and to discuss possibly entering into an exclusive or non-exclusive financial development agreement, terms to be negotiated;
3. the opportunity for Peak and/or its representative to enter into a business development agreement with HPEV.

There is no agreement between or among the Parties that any of the above and foregoing opportunities shall lead to any future agreement between the Parties. The commitment set forth herein is that HPEV shall give PEAK and/or its representative a full and fair opportunity to present their proposals to a quorum of the entire Board for the Board's consideration. Any such proposals may be accepted or rejected, in whole or in part, without being deemed a breach of the Agreement. The meeting with the Board shall be held the same day and immediately following the meeting set forth in ¶ 25(a) above. PEAK shall be required to submit any and all proposals for financing or investment, a proposed financial development agreement and/or a business development agreement to the Board at least three (3) business days prior to the meeting.

## IV. STANDARDS

26. Settlements of shareholder derivative actions are particularly favored because such litigation is "notoriously difficult and unpredictable." *In re NVIDIA Corp. Derivative Litig.*, 2008 U.S. Dist. LEXIS 117351, 7, 2008 WL 5382544 (N.D. Cal. Dec. 19, 2008) *citing In re AOL Time Warner Shareholder Derivative Litigation,* 2006 U.S. Dist. LEXIS 63260, *8 (S.D.N.Y. September 6, 2006); See also, *Schimmel v. Goldman*, 57 F.R.D. 481, 487 (S.D.N.Y. 1973); *Republic National Life Insurance Company v. Beasley*, 73 F.R.D. 658, 667 (S.D.N.Y. 1977)

27. In evaluating a settlement, a district court must determine whether the proposed settlement is "fundamentally fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e); Mego *Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000); *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). The Court should "ensure that the agreement is 'not the product of fraud or overreaching by, or collusion between, the negotiating parties.'" *In re NVIDIA Corp. Derivative Litig.*, 2008 U.S. Dist. LEXIS 117351, 9, 2008 WL 5382544 (N.D. Cal. Dec. 19, 2008) citing *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 625 (9th Cir. 1982); *see also In re Pacific Enterprises Securities Litigation*, 47 F. 3d 373, 377 (9th Cir. 1995); *Maher v. Zapata Corp.*, 714 F.2d 436, *455, 1983 U.S. App. LEXIS 16994, **57 (5th Cir. 1983) ("Before approving the settlement of a shareholders' derivative action, however, the district court must determine that there has been no fraud or collusion in arriving at the settlement agreement, and that it is fair, reasonable, and adequate.") Parties to the settlement of a shareholders' derivative action are permitted great freedom in shaping the form of the settlement consideration. *Levin v. Mississippi River Corporation*, 59 F.R.D. 353, 367 n. 38 (S.D.N.Y., 1973), aff'd sub nom., *Wesson v. Mississippi River Corporation*, 486 F.2d 1398 (2d Cir., 1973), cert. denied, 414 U.S. 1112, 94 S. Ct. 843, 38 L. Ed. 2d 739 (1973). "The fact that the form of the settlement decided upon is somewhat unusual in that it includes some benefits which cannot be evaluated in financial terms does not militate against its acceptance. . . ." *Levin*, 59 F.R.D. at 367 n. 38. Thus, a settlement may fairly, reasonably, and adequately serve the best interest of a corporation, on whose behalf the derivative action is brought, even though no direct monetary benefits are paid by the defendants to the corporation. *See Goldman v. Northrop Corporation*, 603 F.2d 106, 108-09 (9th Cir, 1979); *Lewis v. Anderson*, 81 F.R.D. 436, 438-39 (S.D.N.Y.1978); *Milstein v. Werner*, 57 F.R.D. 515, 521-23 (S.D.N.Y., 1972); See also *Hill v. Art Rice Realty Co.*, 66 F.R.D. 449, 453 (N.D.Ala.1974), aff'd, 511 F.2d 1400 (5th Cir.1975) ("it does not follow as a matter of course, that money must be paid to make every settlement a reasonable one").

28. "Notice of a proposed settlement, voluntary dismissal or compromise must be given to shareholders or members in the manner that the court orders." Fed. R. Civ. P. 23.1(c). The notice requirement ensures that "dismissal of the derivative suit is in the best interests of the corporation and

the absent stockholders." *Papilsky v. Berndt*, 466 F. 2d 251, 258 (2d Cir. 1972) (citing *Norman v. McKee*, 431 F. 2d 769, 774 (9th Cir. 1970), cert. denied, 401 U.S. 912, 91 S. Ct. 879, 27 L. Ed. 2d 811 (1971)). "More specifically, notice and court approval of settlements under Rule 23.1 discourage private settlements under which the plaintiff-stockholder and his attorney profit to the exclusion of the corporation and nonparty stockholders." *Papilsky*, 466 F. 2d at 258 (citations omitted). In this way the notice requirement guards against collusive settlement practices. *Id.* Courts also recognize the need for notice to prevent "dismissals which are due primarily if not entirely to the named plaintiff's change in heart about prosecuting the action." *Cramer v. General Telephone & Electronics Corp.*, 582 F. 2d 259, 269 (3d Cir. 1978).

**V. LEGAL PREREQUISITES FOR A FAIRNESS HEARING HAVE BEEN SATISFIED**

29. Under Ninth Circuit precedent, it is required that this Court "must grant preliminary approval of a settlement, including approval of the notice to shareholders and the proposed method of notice, before having the final settlement hearing." *In re NVIDIA Corp. Derivative Litig.*, 2008 U.S. Dist. LEXIS 117351, 8, 2008 WL 5382544 (N.D. Cal. Dec. 19, 2008).

30. "If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorney and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, as which arguments and evidence may be presented in support of and in opposition to the settlement." *Manual for Complex Litigation* § 30.41, at 237 (3d ed. 1995); *see also Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981).

31. As set forth hereinbefore, the Parties sought and received preliminary approval of the Settlement Agreement by the Court. The Court approved a Notice to be sent to the non-party shareholders which Notice was provided as directed by the Court. No objections to the Settlement Agreement have been filed within the deadline established by the Court.

32. It is in the interest of the fair and expeditious administration of justice for this Court to set a date for a fairness hearing to consider giving final approval to the Settlement Agreement/PEAK DASA and to approve the Notice thereof attached hereto as Exhibit 2. The Parties also request that the Court approve giving the Notice in the same fashion as the Court directed in its Order granting preliminary approval of the Settlement Agreement: i.e. the Notice shall be provided to non-party shareholders by filing a Form 8-K with the Securities Exchange Commission and by publishing said Notice on the Company's website.

IT IS SO STIPULATED.

DATED this 18th day of August, 2016.

GORDON SILVER

*/s/ Mark S. Dzarnoski*

______________________________

MARK S. DZARNOSKI
500 N. Rainbow Blvd., Suite 120
Las Vegas, Nevada 89107
Tel: (702) 796-5555
*Attorneys for Defendants Timothy J. Hassett, Quentin D. Ponder, Judson W. Bibb III, Theodore H. Banzhaf, Mark M. Hodowanec, and Nominal Defendant HPEV, Inc.*

DATED this 18th day of August, 2016.

FARUQI & FARUQI, LLP

*/s/ Stuart J. Guber*

______________________________

STUART J. GUBER
101 Greenwood Ave., Suite 600
Jenkintown, PA 19046
Tel: 215-277-5770
Fax: 215-277-5771
*Attorneys for Peak Finance, LLC*

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**[PROPOSED] ORDER**

The Court, having reviewed the stipulation of the parties and the Exhibits attached thereto, and good cause appearing:

IT IS HEREBY ORDERED that a fairness hearing to consider giving final approval to the Settlement Agreement negotiated by the Parties is set for the _______ day of ________________________, 2016 at the hour of _______ a.m./p.m.

IT IS FURTHER ORDERED that the Notice attached as Exhibit 2 to the Stipulation of the Parties is approved.

IT IS FURTHER ORDERED that this Notice shall be filed with the SEC by the Company attached to a Form 8-K and published on the Company website (www.cooltechnologiesinc.com) within ten (10) business days of the entry of this Order

**IT IS SO ORDERED.**

____________________________________________
UNITED STATES DISTRICT COURT JUDGE

Dated: _______________________________.