1   GORDON SILVER
    MARK S. DZARNOSKI
2   Nevada Bar No. 3398
    Email: mdzarnoski@gordonsilver.com
3   500 N. Rainbow Blvd., Suite 120
    Las Vegas, NV 89107
4   Tel: (702) 796-5555
    Fax: (702) 369-2666
5   Attorneys for Defendants
    Timothy J. Hassett, Quentin D. Ponder,
6   Judson W. Bibb III, Theodore H. Banzhaf,
    Mark M. Hodowanec, and Nominal Defendant
7   HPEV, Inc.

8                   **UNITED STATES DISTRICT COURT**

9                          **DISTRICT OF NEVADA**

10  PEAK FINANCE, LLC, Derivatively on behalf | CASE NO. 2:15-cv-01590-GMN-CWH
    of Nominal Defendant, HPEV, INC.,
11
                    Plaintiff,                  | **STIPULATION AND [PROPOSED] ORDER**
12                                              | **REGARDING SETTLEMENT**
    vs.
13
    TIMOTHY J. HASSETT, QUENTIN D.
14  PONDER, JUDSON W. BIBB III,
    THEODORE H. BANZHAF, AND MARK M.
15  HODOWANEC,

16                  Defendants.

17
        and
18
    HPEV, INC.
19
                    Nominal Defendant.
20

21          IT IS HEREBY STIPULATED, by and between Plaintiff Peak Finance, LLC ("PEAK"

22  or "Peak Finance"), Defendants  Timothy J. Hassett ("Hassett"), Quentin D. Ponder ("Ponder"),

23  Judson W. Bibb III ("Bibb"),   Theodore H. Banzhaf ("Banzhaf"), and Mark Hodowanec

24  ("Hodowanec") (collectively, the "Individual Defendants")[1], and Nominal Defendant HPEV,

25  Inc. ("HPEV" or the "Company"), by and through their counsel of record, that:

26          The Court should issue an Order setting a fairness hearing to consider giving final

27  _____

28  [1]  Defendants Hassett, Ponder and Bibb are sometimes collectively referred to as the
    "Management Directors." Defendants Hassett, Ponder, Bibb, Banzhaf and Hodowanec are
    sometimes collectively referred to as the "Management Officers and Directors."

104439-001.0001/2694054

approval to the settlement agreement negotiated between the Parties ("Settlement Agreement" or "Peak DASA") and to approve Notice thereof as proposed herein.

In support of the Stipulation and [Proposed] Order Regarding Settlement ("Stipulation and Order") sought by the parties, the undersigned advise the Court as follows:

## I.      THE CURRENT MATTER BEFORE THE COURT

1.      On August 18, 2015, PEAK filed a Verified Shareholder Derivative Complaint in this matter (the "Peak Finance Derivative Case") [Dkt. 1].

2.      Defendants in the Peak Finance Derivative Case filed a Motion to Dismiss on September 28, 2015.  [Dkt. 31].

3.      On October 22, 2015, PEAK filed an Amended Complaint in the Peak Finance Derivative Case. [Dkt. 39].

4.      On November 9, 2015, HPEV and the Individual Defendants filed a Motion to Dismiss the  Amended Complaint filed by PEAK in the Peak Finance Derivative Case.  [Dkt. 40].

5.       On May 17, 2016, the parties filed a Stipulation requesting that the Court hold in abeyance its decision regarding the Motion to Dismiss until the Court has either finally approved or rejected the proposed Settlement Agreement in this case.  [Dkt. 50]. The Court has not yet ruled upon the Motion to Dismiss.

6.      On April 20, 2016, the parties filed a Stipulation and Proposed Order Regarding Settlement [Dkt. 47].  This Stipulation sought preliminary approval of the Settlement Agreement and a proposed Notice to non-party shareholders advising them of the terms of the settlement and their right to object.

7.      By Order dated May 19, 2016, the Court gave preliminary approval to the Settlement Agreement and approved the proposed Notice.  [Dkt. 51].  The Court further directed that any objections of non-party shareholders were to be filed by July 29, 2016.

8.      The Company provided the approved Notice to non-party shareholders by filing a Form 8-K with the Securities Exchange Commission on June 1, 2016 and by publishing the Notice and Settlement Agreement prominently on its website from on or about May 25, 2016 to

the present. [See Declaration of Mark S. Dzarnoski attached hereto as Exhibit 1].

9.    No objections to the Settlement Agreement have been filed by non-party shareholders.

## II.    THE SPIRIT BEAR DERIVATIVE ACTION

10.    Spirit Bear, Ltd. ("Spirit Bear") and HPEV are parties to that certain Securities Purchase Agreement, dated as of December 14, 2012 (the "Purchase Agreement"), pursuant to which, among other things, Spirit Bear was issued preferred stock and warrants;

11.    A dispute arose between Spirit Bear and HPEV in connection with the Purchase Agreement and other matters involving the ongoing management and operations of HPEV (the "Spirit Bear Dispute");

12.    As a result of the Spirit Bear Dispute, Spirit Bear, HPEV and the Individual Defendants became involved in litigation including  derivative claims filed by Spirit Bear against certain   directors and/or officers of HPEV, including the Individual Defendants,    (the "SBL Derivative Action") in HPEV, Inc. v. Spirit Bear Limited 13-cv-01548 (JAD) (GWF)(D. NEV.);

13.    Spirit Bear, HPEV and the Individual Defendants entered into a Derivative Action Settlement Agreement (the "SBL DASA") in the SBL Derivative Action, which agreement was subject to final approval of the United States District Court;

14.    On October 22, 2015, PEAK filed a Motion to Intervene in the SBL Derivative Action seeking, among other things, approval to file its own derivative complaint in the SBL Derivative Action;

15.    At the November 20, 2015 fairness hearing in the SBL Derivative Action, the Court denied PEAK's Motion to Intervene.

16.    At the November 20, 2015 fairness hearing, however, the Court did allow PEAK to formally argue its objections to the DASA and the Court ordered additional briefing on certain issues.

17.    On April 20, 2016, the parties in the SBL Derivative Action filed a Stipulation and [Proposed] Order for Withdrawal of Objection to the SBL DASA.

/ / /

104439-001.0001/2694054

18.     Following PEAK's withdrawal of its objection to the SBL DASA, the District Court, on May 3, 2016, gave its final approval to the SBL DASA and dismissed the SBL Derivative Action.  [See Dkt. 203 therein].

### III.     THE RELATIONSHIP BETWEEN THE INSTANT ACTION AND THE SBL DERIVATIVE ACTION

19.     The SBL Derivative Action contains allegations of wrongdoing by the Individual Defendants that are substantially similar to but not co-extensive with the allegations set forth in the Peak Finance Derivative Case.

20.     Both cases allege, among other things, ultra vires issuances of shares of stock by the Company and unauthorized or excessive compensation paid to management during overlapping periods of time.

21.     On or about January 28, 2015, the parties in the SBL Derivative Action entered into a Settlement and Release Agreement ("SRA"). Pursuant to Section 2.5 of the SRA, "(t)he Parties agree[d] to seek … a complete dismissal of all Shareholder Derivative Claims" and executed the SBL DASA for submission to the Court for approval.

22.     The essential terms of the SBL DASA are as follows:

a.     The SBL Derivative Action will be dismissed with prejudice;

b.     Christopher McKee, Richard J. "Dick" Schul and Donald Bowman will assume director positions at HPEV to serve as successor directors to Jay Palmer, Carrie Dwyer, and Donica Holt ("SBL Holdover Directors").

c.     Christopher McKee, Richard J. "Dick" Schul and Donald Bowman will form an Independent Directors Committee ("IDC") and shall review the merits of Spirit Bear's derivative claims as set forth in the SBL Derivative Action;

d.     Exercising their sound business judgment, the IDC shall determine the appropriate corporate response of HPEV to the claims raised in the SBL Derivative Action;

e.     The IDC shall have the sole and absolute discretion to take any appropriate responsive action including but not limited to (a) ratification of any and all actions previously undertaken under the authority of the Management Directors; (b) filing a lawsuit against any and all Management Officers & Directors setting forth similar or identical claims as those set forth in the SBL Derivative Action; (c) settling, with or without litigation, any and all claims HPEV may have against any and all Management Officers & Directors on terms and conditions they deem

104439-001.0001/2694054

in the best interest of HPEV; and/or (d) taking such other action as they determine is in the best interest of HPEV; and

f.    No action shall be deemed valid and enforceable if undertaken pursuant to a majority vote of the IDC although the number of IDC members may not be a quorum of all directors of HPEV.

23.    On April 19 and April 20, 2016, the Parties herein signed the Settlement Agreement which contains substantially similar, but not identical, terms and conditions to the SBL DASA.

24.    The essential terms of the Settlement Agreement/PEAK DASA are as follows:

a.    The Parties acknowledge and agree that Christopher McKee, Richard J. "Dick" Schul and Donald Bowman have been duly elected as directors of HPEV pursuant to an election held on August 19, 2015.

b.    The Parties acknowledge and agree that Christopher McKee, Richard J. "Dick" Schul and Donald Bowman have been appointed to an Independent Directors Committee ("IDC") which shall review the merits of Spirit Bear's derivative claims as set forth in the SBL Derivative Action;

c.    In addition to reviewing the merits of Spirit Bear's claims in the SBL Derivative Action, all matters alleged by PEAK in the Peak Finance Derivative Case shall also be submitted to the IDC for their review of the merits of the claims made therein;

d.    Exercising their sound business judgment, the IDC shall determine the appropriate corporate response of HPEV to the claims raised in both the SBL Derivative Action and the Peak Finance Derivative Case, including but not limited to (a) ratification of any and all actions previously undertaken under the authority of the Management Directors; (b) filing a lawsuit against any and all Management Officers & Directors setting forth similar or identical claims as those set forth in the SBL Derivative Action and/or the Peak Finance Derivative Case; (c) settling, with or without litigation, any and all claims HPEV may have against any and all Management Officers & Directors on terms and conditions they deem in the best interest of HPEV; and/or (d) taking such other action as they determine is in the best interest of HPEV.

e.    IDC action shall be deemed valid and enforceable if undertaken pursuant to a majority vote of the IDC although the number of IDC members may not be a quorum of all directors of HPEV. No action by the IDC in connection with its duties and responsibilities pursuant to the Agreement shall be taken until such time as the IDC meets with PEAK, pursuant to Sections III.B and C of the Settlement Agreement.

/ / /

104439-001.0001/2694054

25. In addition to the terms set forth in paragraph 24 above, the Settlement Agreement/PEAK DASA has the following terms not included in the SBL DASA:

a. Within thirty (30) days of the Court's final approval of the Settlement Agreement/PEAK DASA, PEAK shall be given the opportunity to make a presentation solely to the IDC regarding the matters alleged in PEAK's Amended Complaint in the Peak Finance Derivative Case as well as other potential derivative claims PEAK believes may exist against HPEV's auditors and/or other third persons or entities.

b. PEAK and/or its representative shall have the opportunity to present the following matters to the Board:

1. the opportunity for PEAK to make an investment in the Company in exchange of some form of debt or equity or other consideration, terms to be negotiated;

2. the opportunity for Peak and/or its representative to identify and aid in procuring new investors for the Company and to discuss possibly entering into an exclusive or non-exclusive financial development agreement, terms to be negotiated;

3. the opportunity for Peak and/or its representative to enter into a business development agreement with HPEV.

There is no agreement between or among the Parties that any of the above and foregoing opportunities shall lead to any future agreement between the Parties. The commitment set forth herein is that HPEV shall give PEAK and/or its representative a full and fair opportunity to present their proposals to a quorum of the entire Board for the Board's consideration. Any such proposals may be accepted or rejected, in whole or in part, without being deemed a breach of the Agreement.  The meeting with the Board shall be held the same day and immediately following the meeting set forth in ¶ 25(a) above. PEAK shall be required to submit any and all proposals for financing or investment, a proposed financial development agreement and/or a business development agreement to the Board at least three (3) business days prior to the meeting.

## IV.    STANDARDS

26. Settlements of shareholder derivative actions are particularly favored because such litigation is "notoriously difficult and unpredictable." *In re NVIDIA Corp. Derivative Litig*., 2008 U.S. Dist. LEXIS 117351, 7, 2008 WL 5382544 (N.D. Cal. Dec. 19, 2008) *citing In re AOL Time Warner Shareholder Derivative Litigation,* 2006 U.S. Dist. LEXIS 63260, *8 (S.D.N.Y. September 6, 2006); See also, *Schimmel v. Goldman,* 57 F.R.D. 481, 487 (S.D.N.Y. 1973); *Republic National Life Insurance Company v. Beasley*, 73 F.R.D. 658, 667 (S.D.N.Y. 1977)

27.     In evaluating a settlement, a district court must determine whether the proposed settlement is "fundamentally fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e); *Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000); *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). The Court should "ensure that the agreement is 'not the product of fraud or overreaching by, or collusion between, the negotiating parties.'"  *In re NVIDIA Corp. Derivative Litig.*, 2008 U.S. Dist. LEXIS 117351, 9, 2008 WL 5382544 (N.D. Cal. Dec. 19, 2008) citing *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 625 (9th Cir. 1982); *see also In re Pacific Enterprises Securities Litigation,* 47 F. 3d 373, 377 (9th Cir. 1995); *Maher v. Zapata Corp.*, 714 F.2d 436,  *455, 1983 U.S. App. LEXIS 16994, **57  (5th Cir. 1983) ("Before approving the settlement of a shareholders' derivative action, however, the district court must determine that there has been no fraud or collusion in arriving at the settlement agreement, and that it is fair, reasonable, and adequate.") Parties to the settlement of a shareholders' derivative action are permitted great freedom in shaping the form of the settlement consideration. *Levin v. Mississippi River Corporation*, 59 F.R.D. 353, 367 n. 38 (S.D.N.Y., 1973), aff'd sub nom., *Wesson v. Mississippi River Corporation*, 486 F.2d 1398 (2d Cir., 1973), cert. denied, 414 U.S. 1112, 94 S. Ct. 843, 38 L. Ed. 2d 739 (1973). "The fact that the form of the settlement decided upon is somewhat unusual in that it includes some benefits which cannot be evaluated in financial terms does not militate against its acceptance. . . ." *Levin*, 59 F.R.D. at 367 n. 38. Thus, a settlement may fairly, reasonably, and adequately serve the best interest of a corporation, on whose behalf the derivative action is brought, even though no direct monetary benefits are paid by the defendants to the corporation. *See Goldman v. Northrop Corporation*, 603 F.2d 106, 108-09 (9th Cir, 1979); *Lewis v. Anderson*, 81 F.R.D. 436, 438-39 (S.D.N.Y.1978); *Milstein v. Werner*, 57 F.R.D. 515, 521-23 (S.D.N.Y., 1972); See also *Hill v. Art Rice Realty Co.*, 66 F.R.D. 449, 453 (N.D.Ala.1974), aff'd, 511 F.2d 1400 (5th Cir.1975) ("it does not follow as a matter of course, that money must be paid to make every settlement a reasonable one").

28.     "Notice of a proposed settlement, voluntary dismissal or compromise must be given to shareholders or members in the manner that the court orders." Fed. R. Civ. P. 23.1(c). The notice requirement ensures that "dismissal of the derivative suit is in the best interests of the corporation and

the absent stockholders." *Papilsky v. Berndt*, 466 F. 2d 251, 258 (2d Cir. 1972) (citing *Norman v. McKee*, 431 F. 2d 769, 774 (9th Cir. 1970), cert. denied, 401 U.S. 912, 91 S. Ct. 879, 27 L. Ed. 2d 811 (1971)). "More specifically, notice and court approval of settlements under Rule 23.1 discourage private settlements under which the plaintiff-stockholder and his attorney profit to the exclusion of the corporation and nonparty stockholders." *Papilsky*, 466 F. 2d at 258 (citations omitted). In this way the notice requirement guards against collusive settlement practices. *Id.* Courts also recognize the need for notice to prevent "dismissals which are due primarily if not entirely to the named plaintiff's change in heart about prosecuting the action." *Cramer v. General Telephone & Electronics Corp.*, 582 F. 2d 259, 269 (3d Cir. 1978).

## V. LEGAL PREREQUISITES FOR A FAIRNESS HEARING HAVE BEEN SATISFIED

29.     Under Ninth Circuit precedent, it is required that this Court "must grant preliminary approval of a settlement, including approval of the notice to shareholders and the proposed method of notice, before having the final settlement hearing." <u>In re NVIDIA Corp. Derivative Litig.</u>, 2008 U.S. Dist. LEXIS 117351, 8, 2008 WL 5382544 (N.D. Cal. Dec. 19, 2008).

30.     "If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorney and appears to fall within the range of possible approval, the court should direct that notice under <u>Rule 23(e)</u> be given to the class members of a formal fairness hearing, as which arguments and evidence may be presented in support of and in opposition to the settlement." *Manual for Complex Litigation* § 30.41, at 237 (3d ed. 1995); *see also Ellis v. Naval Air Rework Facility*, <u>87 F.R.D. 15, 18 (N.D. Cal. 1980)</u>, *aff'd*, <u>661 F.2d 939 (9th Cir. 1981)</u>.

31.     As set forth hereinbefore, the Parties sought and received preliminary approval of the Settlement Agreement by the Court.  The Court approved a Notice to be sent to the non-party shareholders which Notice was provided as directed by the Court.  No objections to the Settlement Agreement have been filed within the deadline established by the Court.

32.     It is in the interest of the fair and expeditious administration of justice for this Court to set a date for a fairness hearing to consider giving final approval to the Settlement Agreement/PEAK DASA and to approve the Notice thereof attached hereto as Exhibit 2.   The Parties also request that the Court approve giving the Notice in the same fashion as the Court directed in its Order granting preliminary approval of the Settlement Agreement: i.e. the Notice shall be provided to non-party shareholders by filing a Form 8-K with the Securities Exchange Commission and by publishing said Notice on the Company's website.

IT IS SO STIPULATED.

DATED this 18th day of August, 2016.

GORDON SILVER

*/s/ Mark S. Dzarnoski*
_____
MARK S. DZARNOSKI
500 N. Rainbow Blvd., Suite 120
Las Vegas, Nevada 89107
Tel:  (702) 796-5555
*Attorneys for Defendants*
*Timothy J. Hassett, Quentin D. Ponder,*
*Judson W. Bibb III, Theodore H. Banzhaf,*
*Mark M. Hodowanec, and Nominal Defendant*
*HPEV, Inc.*

DATED this 18th day of August, 2016.

FARUQI & FARUQI, LLP

*/s/ Stuart J. Guber*
_____
STUART J. GUBER
101 Greenwood Ave., Suite 600
Jenkintown, PA  19046
Tel:  215-277-5770
Fax:  215-277-5771
*Attorneys for Peak Finance, LLC*

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

104439-001.0001/2694054

**ORDER**

The Court, having reviewed the stipulation of the parties and the Exhibits attached thereto, and good cause appearing:

IT IS HEREBY ORDERED that a fairness hearing to consider giving final approval to the Settlement Agreement negotiated by the Parties is set for the ___11th___ day of ___October___, 2016 at the hour of ___10:30___ a.m.

IT IS FURTHER ORDERED that the Notice attached as Exhibit 2 to the Stipulation of the Parties is approved.

IT IS FURTHER ORDERED that this Notice shall be filed with the SEC by the Company attached to a Form 8-K and published on the Company website (www.cooltechnologiesinc.com) within ten (10) business days of the entry of this Order

**IT IS SO ORDERED.**

_____
UNITED STATES DISTRICT COURT JUDGE

Dated this ___18___ day of August, 2016.

104439-001.0001/2694054

EXHIBIT 1

(Declaration of Mark S. Dzarnoski)

EXHIBIT 1

1 | GORDON SILVER
MARK S. DZARNOSKI
2 | Nevada Bar No. 3398
Email: mdzarnoski@gordonsilver.com
3 | 500 N. Rainbow Blvd., Suite 120
Las Vegas, NV 89107
4 | Tel: (702) 796-5555
Fax: (702) 369-2666
5 | Attorneys for Defendants
Timothy J. Hassett, Quentin D. Ponder,
6 | Judson W. Bibb III, Theodore H. Banzhaf,
Mark M. Hodowanec, and Nominal Defendant
7 | HPEV, Inc.

8 | **UNITED STATES DISTRICT COURT**

9 | **DISTRICT OF NEVADA**

10 | PEAK FINANCE, LLC, Derivatively on behalf | CASE NO. 2:15-cv-01590-GMN-CWH
of Nominal Defendant, HPEV, INC.,

11 | 
Plaintiff,                                  | **DECLARATION OF MARK S.**
12 |                                             | **DZARNOSKI**

vs.
13 |

TIMOTHY J. HASSETT, QUENTIN D.
14 | PONDER, JUDSON W. BIBB III,
THEODORE H. BANZHAF, AND MARK M.
15 | HODOWANEC,

16 | 
Defendants.
17 | ─────────────────────────

and
18 |

HPEV, INC.
19 |
Nominal Defendant.
20 | ─────────────────────────

21 |      The undersigned, Mark S. Dzarnoski hereby, declares under penalty of perjury that the

22 | following assertions are true:

23 |      1.    I am an attorney duly licensed to practice law in the State of Nevada and am in

24 | good standing with the Nevada State Bar Association.

25 |      2.    I represent Defendants   Timothy J. Hassett ("Hassett"), Quentin D. Ponder

26 | ("Ponder"), Judson W. Bibb III ("Bibb"),   Theodore H. Banzhaf ("Banzhaf"), and Mark

27 | Hodowanec ("Hodowanec") (collectively, the "Individual Defendants"), and Nominal Defendant

28 | HPEV, Inc. a/k/a Cool Technologies, Inc. in the above entitled matter.

1 of 3

104439-001.0001/2694054

1    **3.**      I make this Declaration in support of **STIPULATION AND [PROPOSED]**

2    **ORDER REGARDING SETTLEMENT which seeks to have the Court set a date and time**

3    **for a fairness hearing to consider final approval of the settlement reached between the**

4    **parties in this case ("Settlement Agreement").**

5    4.      By Order dated May 18, 2016, the Court gave preliminary approval to the

6    Settlement Agreement and approved the proposed Notice.  [Dkt. 51].    Therein, the Court

7    directed that the Notice be "filed with the SEC by the Company attached to a Form 8-K and

8    published on the Company website (www.cooltechnologies.com) within ten (10) business days

9    of the entry of this Order."

10   5.      June 1, 2016 was the tenth business day from the date of the May 18, 2016 Order.

11   6.      As evidenced on the Securities and Exchange Commission's EDGAR filing

12   database, the Company filed a Form 8-K on June 1, 2016 which announced the Court's

13   preliminary approval of the Settlement Agreement.  Attached as Exhibit 10.54 was the "Notice of

14   Proposed Settlement of Derivative Claims with attached Settlement Agreement."

15   7.      I affirm that I personally reviewed the form and substance of the Company's disclosure of the

16   Notice   of   Proposed   Settlement   and   the   Settlement   Agreement   on   the   Company's   website

17   (www.cooltechnologies.com).  At my instruction, the Company placed a prominent link at the

18   top of its Home Page stating as follows: "Shareholders: Please see Notice of Proposed Settlement

19   of Peak Finance Derivative Action."   Clicking on that link led directly to a page publishing

20   further links to both the Settlement Agreement and the Notice.   Additionally, the Company's

21   Home Page links to the following subjects:  Home, Company, Investors, Thermal Dispersion,

22   Mobile Electric Power, and Blog.  In the link for "Investors," a drop down menu provides the

23   following options:   SEC Filings, Legal Documents, News, Industry Interview, and Further

24   Reading.   Upon clicking the link for "Legal Documents," a website user is sent to the page

25   containing the links to the Settlement Agreement and the Notice.

26   8.      The website with the aforementioned links to the Settlement Agreement was fully

27   functional as of May 25, 2016 and has been so structured to provide the required Notice

28   continuously since May 25, 2016 to the present.

2 of 3

1    I declare under penalty of perjury pursuant to the laws of the United States that the above

2    and foregoing is true of my own knowledge.

3    Executed this 18th day of August, 2016.

4

5    _____

6    MARK S. DZARNOSKI

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

104439-001.0001/2694054

# EXHIBIT 2

## (Notice of Fairness Hearing)

EXHIBIT 2

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

PEAK FINANCE, LLC, Derivatively on behalf of Nominal Defendant, HPEV, INC.,

        Plaintiff,

vs.

TIMOTHY J. HASSETT, QUENTIN D. PONDER, JUDSON W. BIBB III, THEODORE H. BANZHAF, AND MARK M. HODOWANEC,

        Defendants.

    and

HPEV, INC.

        Nominal Defendant.

CASE NO. 2:15-cv-01590-GMN-CWH

**NOTICE OF FAIRNESS HEARING ON PROPOSED SETTLEMENT OF DERIVATIVE CLAIMS**

**THIS NOTICE IS TO TELL YOU THAT THE PARTIES IN THE ABOVE LAWSUIT HAVE REACHED A PROPOSED SETTLEMENT OF CLAIMS MADE FOR AND ON BEHALF OF HPEV, INC. (AKA COOL TECHNOLOGIES, INC.) AND THAT THE COURT HAS SCHEDULED A FORMAL FAIRNESS HEARING TO CONSIDER FINAL APPROVAL OF THE SETTLEMENT. NOTICE OF THE SETTLEMENT WAS PREVIOUSLY DISSEMINATED AND NO OBJECTIONS TO THE SETTLEMENT WERE RECEIVED BY THE JULY 29, 2016, DEADLINE. YOU HAVE BEEN IDENTIFIED AS A SHAREHOLDER OF HPEV, INC. AND HAVE THE RIGHT TO ATTEND THE HEARING.**

**THIS NOTICE EXPLAINS:**

**A. WHAT THE LAWSUIT IS ABOUT**
**B. PURPOSE OF THIS NOTICE**
**C. TERMS OF THE SETTLEMENT**
**D. YOUR RIGHT TO ATTEND**
**E. CONTACT INFORMATION FOR ATTORNEYS OF RECORD**

**A. WHAT THIS LAWSUIT IS ABOUT:** On August 18, 2015, Peak Finance, LLC ("Plaintiff" or "PEAK") filed a Complaint against Cool Technologies, Inc. aka HPEV, Inc. ("HPEV" or the "Company") and Defendants Timothy J. Hassett ("Hassett"), Quentin D. Ponder ("Ponder"), Judson W. Bibb III ("Bibb"), Theodore H. Banzhaf ("Banzhaf"), and Mark M. Hodowanec ("Hodowanec" and collectively with Hassett, Ponder, Bibb, and Banzhaf the "Management Officers & Directors"). A First Amended Complaint was filed on October 22, 2015 which states, *inter alia*, that the action is a shareholder's derivative action brought for the benefit of Nominal Defendant Cool Technologies, Inc. against certain members of the Company's Board of Directors and executive officers for violations of federal and state law, including issuing a materially false and misleading proxy statement in violation of Section 14(a) of the Securities Exchange Act of 1934 (the "1934 Act") and breaches of fiduciary duty from June 18, 2013 through the present (the "Relevant Period")" The alleged breaches of fiduciary duty are further described as the issuance of equity or debt without authority and taking unauthorized and excessive compensation. These

**Gordon Silver**
Attorneys At Law
500 N. Rainbow Blvd.
Suite 120
Las Vegas, NV 89107
(702) 796-5555

104439-001.0001/2694066

allegations are substantially similar to but not co-extensive with the allegations made by Spirit Bear Limited against the Management Officers & Directors in another derivative case filed in United States District Court, District of Nevada (the "SBL Derivative Action," See Case 2:13-cv-01548-JAD-GWF, United States District Court, District of Nevada). A settlement was reached in the SBL Derivative Action which received final approval by the district court and the case was dismissed. The terms of settlement in the SBL Derivative Action are substantially similar to the terms of the proposed settlement of this case.

The Company and the Management Officers & Directors have filed a Motion to Dismiss PEAK's First Amended Complaint. That Motion to Dismiss is currently pending before this Court and a decision thereon is being held in abeyance while the Court considers approval of the settlement.

A "derivative lawsuit" is one brought by a shareholder of a company seeking a judgment in favor of the company rather than in favor of the shareholder himself/herself. Here, PEAK seeks, *among other things*, (a) a monetary judgment in favor of the Company and against the Management Officers & Directors for some presently unknown amount of damages; (b) the filing of an amended Proxy Statement; and (c) reformation of internal procedures of the Company.

**B. PURPOSE OF THIS NOTICE:** This Notice is sent to inform you that the formal Fairness Hearing to consider final approval of the settlement has been scheduled in connection with the Proposed Settlement Agreement which will result in the dismissal of the action. Pursuant to the Federal Rules of Civil Procedure, a derivative lawsuit may only be settled or dismissed with court approval and the settling parties must send a Notice to the other shareholders as directed by the court. This Notice is intended to advise you of (1) the terms of the proposed settlement and (2) your right to attend the fairness hearing. The hearing is scheduled for the _____ th day of _____, 2015 at the hour of _____ am/pm in Courtroom _____ at Lloyd D. George U.S. Courthouse, 333 Las Vegas Blvd., South, Las Vegas, Nevada, 89101..

**C. TERMS OF THE SETTLEMENT:** PEAK and HPEV have agreed to settle this matter on the following general terms:

1. The Parties acknowledge and agree that Christopher McKee, Richard J. "Dick" Schul and Donald Bowman have been duly elected as directors of HPEV pursuant to an election held on August 19, 2015.

2. The Parties acknowledge and agree that Christopher McKee, Richard J. "Dick" Schul and Donald Bowman have been appointed to an Independent Directors Committee ("IDC") which shall review the merits of Spirit Bear's derivative claims as set forth in the SBL Derivative Action;

3. In addition to reviewing the merits of Spirit Bear's claims in the SBL Derivative Action, all matters alleged by PEAK in the Peak Finance Derivative Case shall also be submitted to the IDC for their review of the merits of the claims made therein;

4. Exercising their sound business judgment, the IDC shall determine the appropriate corporate response of HPEV to the claims raised in both the SBL Derivative Action and the Peak Finance Derivative Case;

5. The IDC shall have the sole and absolute discretion to take any appropriate responsive action including but not limited to (a) ratification of any and all actions previously undertaken under the authority of the Management Directors; (b) filing a lawsuit against any and all Management Officers & Directors setting forth similar or identical claims as those set forth in the SBL Derivative Action and/or the Peak Finance Derivative Case; (c) settling, with or without litigation, any and all claims HPEV may have against any and all Management Officers & Directors on terms and conditions they deem in the best interest of HPEV; and/or (d) taking such other action as they determine is in the best interest of HPEV.

6. IDC action shall be deemed valid and enforceable if undertaken pursuant to a majority vote of the IDC although the number of IDC members may not be a quorum of all directors of HPEV.

7. Within thirty (30) days of the Court approval of the Settlement, PEAK shall be given the opportunity to make a presentation solely to the IDC regarding the matters alleged in PEAK's Amended Complaint in the Peak Finance

Gordon Silver
Attorneys At Law
500 N. Rainbow Blvd.
Suite 120
Las Vegas, NV 89107
(702) 796-5555

104439-001.0001/2694066

Derivative Case as well as other potential derivative claims PEAK believes may exist against HPEV's auditors and/or other third persons or entities.

8.  PEAK and/or its representative shall have the opportunity to present the following matters to the Board;

       a.   the opportunity to possibly make an investment in the company in exchange of some form of debt or equity, terms to be negotiated.

       b.   The opportunity to identify and aid in procuring new investors for the company and to discuss possibly entering into an exclusive or non-exclusive financial development agreement, terms to be negotiated.

       c.   The opportunity to possibly enter into a business development agreement with HPEV.

      No money, stock or other valuable consideration is being paid or given to PEAK as part of the Settlement. The parties acknowledge that it is in the best interests of all shareholders for the Company to be able to raise additional capital from institutional or accredited investors.  Additional capital will allow the Company to further its operational developmental which will, hopefully, positively influence the market price of the Company's shares which will inure to the benefit of all shareholders.

      A dismissal, with prejudice, means that PEAK will be considered to have given up any potential derivative claims that it can assert on behalf of the Company against the Management Officers & Directors.  Pursuant to the Proposed Settlement Agreement, it is the IDC that will investigate and determine the merits of any claims that the Company may have against the Management Officers & Directors and, if any claims are deemed meritorious, how to resolve them, including whether to file a new lawsuit against the Management Officers & Directors.  Essentially, control over how to resolve the allegations that are contained in the SBL Derivative Action and in this action will be transferred from Spirit Bear and PEAK to the IDC.

      A copy of the Proposed Settlement Agreement is attached hereto for your review.

**D. YOUR RIGHTS TO ATTEND HEARING:**  The Court previously gave preliminary approval of the settlement and directed that a Notice be sent to shareholders advising them of their right to file objections with the Court.  That Notice was filed with the United States Securities Exchange Commission on Form 8-K on June 1, 2016.  The Notice was further published on HPEV's website from on or about May 25, 2016 to August 9, 2016.  Shareholders were given until July 29, 2016 to file objections with the Court.  No objections were filed.  The Court has now set a hearing date to consider final approval of the settlement agreement.  Since the Proposed Settlement Agreement involves actions to be taken by the Company rather than PEAK individually, the Court must approve it before it is legally effective.  Generally speaking, a court will only approve settlements of derivative suits if the settlement is considered fair to the corporation.  In determining whether the settlement is fair to the corporation and before giving its final approval, the Court may consider any and all evidence and arguments that are properly filed and raised by shareholders at the fairness hearing.

**E.  ATTORNEYS FOR THE PARTIES:**  Should you have any questions regarding the contents of this Notice or the fairness hearing, feel free to contact the attorneys for either party or both parties.

| | |
|---|---|
| Mark S. Dzarnoski, Esq. | Stuart J. Guber, Esq. |
| Gordon Silver | Faruqi & Faruqi, LLP |
| 410 S. Rampart Blvd., Suite 420     . | 101 Greenwood Ave., Suite 600 |
| Las Vegas, Nevada 89145 | Jenkintown, PA 19046 |
| | |
| Attorney for HPEV and | Attorney for Peak Finance, LLC |
| Defendants Timothy J. Hassett, | |
| Quentin D. Ponder, Judson W. Bibb, | |
| and Theodore H. Banzhaf | |

PLEASE DO **NOT** SEND ANYTHING DIRECTLY TO THE JUDGE ASSIGNED TO THIS CASE

**Gordon Silver**
Attorneys At Law
500 N. Rainbow Blvd.
Suite 120
Las Vegas, NV 89107
(702) 796-5555

3 of 3

104439-001.0001/2694066