1  GORDON SILVER
   MARK S. DZARNOSKI
2  Nevada Bar No. 3398
   Email: mdzarnoski@gordonsilver.com
3  410 S. Rampart Blvd., Suite 420
   Las Vegas, NV 89145
4  Tel: (702) 796-5555
   Fax: (702) 778-9709
5  Attorneys for Defendants
   Timothy J. Hassett, Quentin D. Ponder,
6  Judson W. Bibb III, Theodore H. Banzhaf,
   Mark M. Hodowanec, and Nominal Defendant
7  HPEV, Inc.

8                    **UNITED STATES DISTRICT COURT**

9                        **DISTRICT OF NEVADA**

| | |
|---|---|
| 10  PEAK FINANCE, LLC, Derivatively on behalf of Nominal Defendant, HPEV, INC., | CASE NO. 2:15-cv-01590-GMN-CWH |
| 11 | |
| 12          Plaintiff, | **FINAL ORDER APPROVING DERIVATIVE ACTION SETTLEMENT AGREEMENT AND FOR DISMISSAL** |
| 13  vs. | |
| 14  TIMOTHY J. HASSETT, QUENTIN D. PONDER, JUDSON W. BIBB III, THEODORE H. BANZHAF, AND MARK M. | |
| 15  HODOWANEC, | |
| 16          Defendants. | |
| 17 | |
| 18  and | |
| 19  HPEV, INC. | |
| 20          Nominal Defendant. | |

21     Pending before the Court is the final approval of the Derivative Action Settlement

22  Agreement (the "DASA") entered into by and between the parties to this action. Based upon the

23  pleadings and other papers filed with the Court and the arguments of counsel appearing herein,

24  the Court enters the following Findings of Fact, Conclusions of Law and Order.

25  **FINDINGS OF FACT**

26     1.     On August 18, 2015, Peak Finance, LLC ("PEAK") filed a Verified Shareholder

27  Derivative Complaint in this matter [Dkt. 1].

28     2.     Defendants filed a Motion to Dismiss on September 28, 2015. [Dkt. 31].

Gordon Silver
Attorneys At Law
410 S. Rampart Blvd.
Suite 420
Las Vegas, NV 89145
(702) 796-5555

1 of 8

3.      On October 22, 2015, PEAK filed an Amended Complaint. [Dkt. 39].

4.      On November 9, 2015, HPEV and the Individual Defendants  filed a Motion to Dismiss the  Amended Complaint filed by PEAK [Dkt. 40].

5.      On January 4, 2016, the parties filed a Stipulation and Proposed Order for Stay of Proceedings.  [Dkt. 45].  Said Stipulation sought a stay of discovery and other proceedings pursuant to the Private Securities Litigation Reform Act of 1995 until the Motion to Dismiss was decided by the Court.  The Court granted the stay as requested by the parties by Order dated January 6, 2016.  [Dkt. 46].

6.       Thereafter, prior to the Court ruling upon the Motion to Dismiss, on April 20, 2016, the parties filed a Stipulation and Proposed Order Regarding Settlement [Dkt. 47].  This Stipulation sought preliminary approval of the DASA and a proposed Notice to non-party shareholders advising them of the terms of the settlement and their right to object.

7.      On May 17, 2016, the parties filed a Stipulation requesting that the Court hold in abeyance its decision regarding the Motion to Dismiss until the Court either finally approved or rejected the proposed DASA in this case.  [Dkt. 50].

8.      By Order dated May 19, 2016, the Court gave preliminary approval to the DASA and approved the proposed Notice.  The Court further directed that any objections of non-party shareholders were to be filed by July 29, 2016.  [Dkt. 51].

9.      The Company provided the approved Notice to non-party shareholders by filing a Form 8-K with the Securities Exchange Commission on June 1, 2016 and by publishing the Notice and DASA prominently on its website from on or about May 25, 2016 to the present. [See Dkt. 53-1 ].

10.      No objections to the DASA were filed by non-party shareholders by July 29, 2016.

11.      On August 18, 2016, the parties filed a Stilupation and [Proposed] Order Regarding Settlement requesting that the Court set a fairness hearing to consider giving final approval to the DASA negotiated between the parties and approving a Notice thereof to be distributed to non-party shareholders.  [Dkt. 53].

Gordon Silver
Attorneys At Law
410 S. Rampart Blvd.
Suite 420
Las Vegas, NV 89145
(702) 796-5555

12.     On August 19, 2016, the Court issued an Order setting a final fairness hearing and approving the form of Notice presented by the parties.  [Dkt. 55].  The Court further directed that the "Notice shall be filed with the SEC by the Company attached to a Form 8-K and published on the Company website (www.cooltechnologiesinc.com) within ten (10) business days of the entry of this Order." [Dkt 55, 10:9-11].

13.     September 1, 2016 was the tenth business day from the date of the August 18, 2016 Order.

14.     The Company filed a Form 8-K on August 23, 2016 which advised shareholders of the Court's August 18, 2016 Order and attached the approved Notice as Exhibit 10.55.  [See Dkt. 60-1].

15.     The approved Notice was published on the Company's website continuously from on or about August 26, 2016 to October 11, 2016.  [See Dkt. 60-1].

16.     No objections were filed to the DASA between July 29, 2016 and October 11, 2016.

17.     No non-party shareholders appeared at the fairness hearing desiring to be heard either in favor of or opposed to the DASA.

18.     The DASA is fundamentally fair, reasonable, and adequate to the Company and its shareholders; and it is not the product of fraud or overreaching by, or collusion among, the negotiating parties.

19.     The derivative Plaintiff, PEAK, is not receiving anything of monetary value personally from the settlement.

20.     The submission of the allegations contained in the derivative action to an Independent Directors Committee (the "IDC") as required by the DASA advances the general corporate principle that "(i)n managing the corporation's affairs, the board of directors may generally decide whether to take legal action on the corporation's behalf."  *Shoen v. Sac Holding Corp.*, 122 Nev. 621, 632-633, 137 P.3d 1171, 1179, 2006 Nev. LEXIS 77, 18, 122 Nev. Adv. Rep. 57 (Nev. 2006).

21.     The members of the IDC were not members of the HPEV Board at the time the

**Gordon Silver**
Attorneys At Law
410 S. Rampart Blvd.
Suite 420
Las Vegas, NV 89145
(702) 796-5555

complained of actions occurred and the verified derivative complaint on file herein does not allege any misconduct by any of them.

22.     The members of the IDC were duly elected to the Board of HPEV by an election occurring on August 19, 2015 in which they each received the affirmative vote of a majority of the issued and outstanding shares in the company.

23.     Within the context of the allegations set forth in the derivative complaint, the IDC members are both independent and disinterested.

**CONCLUSIONS OF LAW**

1.     Settlements of shareholder derivative actions are particularly favored because such litigation is "notoriously difficult and unpredictable." *In re NVIDIA Corp. Derivative Litig.*, 2008 U.S. Dist. LEXIS 117351, 7, 2008 WL 5382544 (N.D. Cal. Dec. 19, 2008) *citing In re AOL Time Warner Shareholder Derivative Litigation,* 2006 U.S. Dist. LEXIS 63260, *8 (S.D.N.Y. September 6, 2006); See also, *Schimmel v. Goldman,* 57 F.R.D. 481, 487 (S.D.N.Y. 1973); *Republic National Life Insurance Company v. Beasley*, 73 F.R.D. 658, 667 (S.D.N.Y. 1977)

2.     In evaluating a settlement, a district court must determine whether the proposed settlement is "fundamentally fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e); *Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000); *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). The Court should "ensure that the agreement is 'not the product of fraud or overreaching by, or collusion between, the negotiating parties.'" *In re NVIDIA Corp. Derivative Litig.*, 2008 U.S. Dist. LEXIS 117351, 9, 2008 WL 5382544 (N.D. Cal. Dec. 19, 2008) citing *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 625 (9th Cir. 1982); *see also In re Pacific Enterprises Securities Litigation,* 47 F. 3d 373, 377 (9th Cir. 1995); *Maher v. Zapata Corp.*, 714 F.2d 436,  *455, 1983 U.S. App. LEXIS 16994, **57  (5th Cir. 1983) ("Before approving the settlement of a shareholders' derivative action, however, the district court must determine that there has been no fraud or collusion in arriving at the settlement agreement, and that it is fair, reasonable, and adequate.") Parties to the settlement of a shareholders' derivative action are permitted great freedom in shaping the form of the settlement consideration. *Levin v. Mississippi River Corporation*, 59 F.R.D. 353, 367 n. 38 (S.D.N.Y., 1973), aff'd sub nom., *Wesson v. Mississippi*

Gordon Silver
Attorneys At Law
410 S. Rampart Blvd.
Suite 420
Las Vegas, NV 89145
(702) 796-5555

4 of 8

1   *River Corporation*, 486 F.2d 1398 (2d Cir., 1973), cert. denied, 414 U.S. 1112, 94 S. Ct. 843, 38 L.

2   Ed. 2d 739 (1973). "The fact that the form of the settlement decided upon is somewhat unusual in

3   that it includes some benefits which cannot be evaluated in financial terms does not militate against

4   its acceptance. . . ." *Levin*, 59 F.R.D. at 367 n. 38. Thus, a settlement may fairly, reasonably, and

5   adequately serve the best interest of a corporation, on whose behalf the derivative action is brought,

6   even though no direct monetary benefits are paid by the defendants to the corporation. *See Goldman*

7   *v. Northrop Corporation*, 603 F.2d 106, 108-09 (9th Cir, 1979); *Lewis v. Anderson*, 81 F.R.D. 436,

8   438-39 (S.D.N.Y.1978); *Milstein v. Werner*, 57 F.R.D. 515, 521-23 (S.D.N.Y., 1972); See also *Hill*

9   *v. Art Rice Realty Co.*, 66 F.R.D. 449, 453 (N.D.Ala.1974), aff'd, 511 F.2d 1400 (5th Cir.1975) ("it

10   does not follow as a matter of course, that money must be paid to make every settlement a reasonable

11   one").

12      3.      "Notice of a proposed settlement, voluntary dismissal or compromise must be given

13   to shareholders or members in the manner that the court orders." Fed. R. Civ. P. 23.1(c). The notice

14   requirement ensures that "dismissal of the derivative suit is in the best interests of the corporation and

15   the absent stockholders." *Papilsky v. Berndt*, 466 F. 2d 251, 258 (2d Cir. 1972) (citing *Norman v.*

16   *McKee*, 431 F. 2d 769, 774 (9th Cir. 1970), cert. denied, 401 U.S. 912, 91 S. Ct. 879, 27 L. Ed. 2d

17   811 (1971)). "More specifically, notice and court approval of settlements under Rule 23.1 discourage

18   private settlements under which the plaintiff-stockholder and his attorney profit to the exclusion of

19   the corporation and nonparty stockholders." *Papilsky*, 466 F. 2d at 258 (citations omitted). In this

20   way the notice requirement guards against collusive settlement practices. *Id.* Courts also recognize

21   the need for notice to prevent "dismissals which are due primarily if not entirely to the named

22   plaintiff's change in heart about prosecuting the action." *Cramer v. General Telephone & Electronics*

23   *Corp.*, 582 F. 2d 259, 269 (3d Cir. 1978).

24      4.      In determining whether IDC members are appropriate corporate representatives to

25   investigate and respond to the allegations contained in the verified complaint on file herein, the

26   proper test to apply is that set forth in *Rales v. Blasband,* 634 A.2d 927 (Del.1993).   The *Rales*

27   test considers whether the particularized factual allegations create a reasonable doubt that the

28   majority of the board or committee considering the alleged wrongdoing can properly exercise its

**Gordon Silver**
Attorneys At Law
410 S. Rampart Blvd.
Suite 420
Las Vegas, NV 89145
(702) 796-5555

5 of 8

1   independent and disinterested business judgment in responding to a demand. *Rales,* 634 A.2d at

2   934.

3       5.    Director self-interest exists when the decision to be made "will have a materially

4   detrimental impact on a director, but not on the corporation and the stockholders." *Rales v.*

5   *Blasband,* 634 A.2d 927, 936 (Del.1993).   It is not enough to establish the interest of a director

6   by alleging that he received *any* benefit not equally shared by the stockholders. Such benefit

7   must be alleged to be *material* to that director. *Cede & Co. v. Technicolor, Inc.,* 634 A.2d 345,

8   363 (1993).  Materiality means that the alleged benefit was significant enough "*in the context of*

9   *the director's economic circumstances,* as to have made it improbable that the director could

10   perform her fiduciary duties to the ...  without being influenced by her overriding personal

11   interest." *In re General Motors Class H Shareholders Litig.,* Del.Ch., 734 A.2d 611, 617 (1999).

12       6.    On the separate question of independence, "[i]ndependence means that a

13   director's decision is based on the corporate merits of the subject before the board rather than

14   extraneous considerations or influences." *Aronson v. Lewis,* 473 A.2d 805, 816 (Del.1984).  This

15   lack of independence can be shown when a plaintiff pleads facts that establish "that the directors

16   are 'beholden' to [the controlling person] or so under their influence that their discretion would

17   be sterilized." *Rales,* 634 A.2d at 936; *see* *also* *Aronson,* 473 A.2d at 815 (stating that one way to

18   allege successfully that an individual director is under the control of another is by pleading "such

19   facts as would demonstrate that through personal or other relationships the directors are beholden

20   to the controlling person").

21       7.    In determining either a director's interest or lack of independence, the Court

22   applies a subjective "actual person" standard to determine whether a *particular* director's interest

23   is material and debilitating or that he lacks independence because he is controlled by another .

24   *Aronson,* 473 A.2d at 816 (citation omitted) (quoting *Kaplan v. Centex Corp.,* Del.Ch., 284 A.2d

25   119, 123 (1971)).

26       8.    "(I)n making a business decision, disinterested directors may invoke the business

27   judgment rule's protections. In other words, even a bad decision is generally protected by the

28   business judgment rule's presumption that the directors acted in good faith, with knowledge of

Gordon Silver
Attorneys At Law
410 S. Rampart Blvd.
Suite 420
Las Vegas, NV 89145
(702) 796-5555

6 of 8

1   the pertinent information, and with an honest belief that the action would serve the corporation's

2   interests." *Shoen v. Sac Holding Corp.*, 122 Nev. 621, 636, 137 P.3d 1171, 1181, 2006 Nev.

3   LEXIS 77, 27, 122 Nev. Adv. Rep. 57 (Nev. 2006).

4      9.  A committee of independent directors has the power to cause a pending derivative

5   suit to be dismissed in a context wherein a prior demand on the board of directors was excused.

6   *Zapata Corp. v. Maldonado*, Del.Supr., 430 A.2d 779 (1981).  *See also* <u>Abbey v. Computer &</u>

7   <u>Communications Technology Corp.</u>, <u>457 A.2d 368, 372, 1983 Del. Ch. LEXIS 390, 10-11 (Del.</u>

8   <u>Ch. 1983)</u>.

9   ///

10  ///

11  ///

12  ///

13  ///

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

**Gordon Silver**
Attorneys At Law
410 S. Rampart Blvd.
Suite 420
Las Vegas, NV 89145
(702) 796-5555

1

**ORDER**

2      Based upon the above and foregoing Findings of Fact and Conclusions of Law and good

3  cause appearing:

4      IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

5      The Derivative Action Settlement Agreement presented to the Court in this matter is

6  APPROVED and is deemed fully and finally effective as of the date of the filing of this Order

7  with the Clerk of the Court; and the derivative action filed in this matter is hereby DISMISSED,

8  with prejudice.

9                                   IT IS SO ORDERED.

10

11                                   _____

12                                   UNITED STATES DISTRICT COURT JUDGE

                                     Dated: October 20, 2016

13

14

15  JOINTLY SUBMITTED BY:

    GORDON SILVER

16
     /s/ Mark S. Dzarnoski
17  _____
    MARK S. DZARNOSKI
18  500 N. Rainbow Blvd., Suite 120
    Las Vegas, Nevada 89107
19  Tel:  (702) 796-5555
    *Attorneys for Defendants*
20  *Timothy J. Hassett, Quentin D. Ponder,*
    *Judson W. Bibb III, Theodore H. Banzhaf,*
21  *Mark M. Hodowanec, and Nominal*
    *Defendant HPEV, Inc.*
22

23  FARUQI & FARUQI, LLP

24   /s/ Stuart J. Guber
    _____
25  STUART J. GUBER
    101 Greenwood Ave., Suite 600
26  Jenkintown, PA  19046
    Tel:  215-277-5770
27  Fax:  215-277-5771
    *Attorneys for Peak Finance, LLC*

28

Gordon Silver
Attorneys At Law
410 S. Rampart Blvd.
Suite 420
Las Vegas, NV 89145
(702) 796-5555

8 of 8